604 A.2d 1141

**Lawrence C. GEE, Jr., Carl Gee and Florence Gee, Appellants,**

**v.**

**BLUE STONE HEIGHTS HUNTING CLUB, INC., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1991.

Decided Feb. 24, 1992.

Joseph F. Orso, III, for appellants.

Paul W. Reeder, for appellee.

Before COLINS and SMITH, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Lawrence C. Gee, Jr., Carl Gee and Florence Gee (the Gees) appeal an order of the Court of Common Pleas of Lycoming County (trial court) denying the Gees' post-trial motions for the dissolution of the Blue Stone Heights Hunting Club, Inc. (Blue Stone).

On June 15, 1988, the Gees filed an equity action seeking involuntary dissolution of the corporation, as well as the distribution of corporate assets to the members of the club. They also requested the appointment of a receiver to preserve corporate assets and to carry on business pending the resolution of the case. Furthermore, the Gees sought an injunction enjoining the expulsion of Carl Gee from the club. After the filing of the initial lawsuit, relief concerning the appointment of a receiver, as well as the injunction, were not pursued. However, a non-jury trial was held to decide the issue of involuntary dissolution. The Gees sought dissolution of the club on the grounds that the corporation failed to achieve its articulated objectives and that the members of the corporation engaged in illegal, fraudulent, and oppressive conduct.

Blue Stone is a non-profit corporation/club consisting of a cabin and adjoining property, approximately 150 acres, located in McHenry Township, Lycoming County, Pennsylvania. Pursuant to the Articles of Incorporation, the purposes and objectives of the corporation include: hunting, fishing, spreading the ideals of sportsmanship among members, social enjoyment, outdoor activities, and the holding of the clubhouse for the members. The Articles of Incorporation prohibit members from reaping financial gain from club membership. The fair market value of the club at the time of incorporation in 1947 was $2,400.00. However, the property has appreciated substantially and, as of January, 1990, the cabin was appraised at a market value of $22,-500.00, and the surrounding land was appraised at $141,-000.00, exclusive of timber values.

At incorporation in 1947, instead of issuing stock, Blue Stone issued 12 Certificates of Membership. These certifi-

cates were not transferable without the first offering being made to present members of the corporation and without the approval of the majority of the present members.[1] In 1957, Lawrence Gee, Jr. inherited his membership certificate from his grandfather, Carl Ertel, a charter member. Florence Gee obtained her membership from her late husband, Lawrence C. Gee, Sr., and Lawrence Gee, Jr. purchased for his son, Carl Gee, membership in the club in 1960. Florence and Carl Gee, Jr. were active members of the club until 1964, when they moved to Florida. Lawrence Gee, Jr. moved from Pennsylvania in 1964 and has resided in Snellville, Georgia, since 1977. Carl Gee continued paying dues until approximately 1985. The Gees argue, however, that they retained membership in the club for investment purposes after leaving the Commonwealth.

The constitution of the corporation allowed for the collection of dues which were $ .50 per month initially and, as of 1985, were raised to $6.00 per month. According to the By–Laws of the corporation, members who became delinquent by willful neglect of the payment of their dues were fined $20.00 per year and, after a three-year period of delinquency, Section III of the By–Laws provides for the corporation to request that the delinquent member sell his or her shares to the corporation, minus all fines. Carl Gee fell behind in his payment of dues and, as of October, 1987, his account was in arrears in excess of $180.00. Hence, in October, 1987, Carl Gee was notified by Carl Laudenslager, the corporate secretary, that his membership was being cancelled.

In response to these actions, the Gees sought to voluntarily cancel their memberships in the club, and each requested a return of $13,000.00 on their original $200.00 membership subscription. These requests were declined. Hence, the Gees brought the instant lawsuit, alleging that the objec-

1. Section IV–1 of the Articles of Incorporation provides that "other than the original twelve charter members, a prospective member must be a blood descendant of Valentine and Catherine Ertel." This unique sanguinity requirement is not an issue in the present controversy.

tives of the corporation have failed and that the members of the corporation have engaged in oppressive conduct.

Before the trial court, the Gees sought dissolution of the club in order to receive their shares of the fair market value of the corporation's assets. Alternatively, the Gees requested that their shares of the corporation be purchased for the fair market value of the corporate assets. Therefore, they each requested reimbursement of $13,000.00, (based upon their contended valuation), as opposed to $200.00, which was the original membership fee refunded by the club to each party, pursuant to the By–Laws. The trial court denied the relief to the Gees on the grounds that the objectives of the corporation were being met and that members of the corporation had not engaged in oppressive conduct. Therefore, the Gees moved for post-trial relief for the dissolution of the club, and this motion was also denied by the trial court.

On appeal to this Court, the Gees argue that the trial court's denial of their motion for post-trial relief is without factual basis and is erroneous as a matter of law. According to the Gees, the club should be dissolved on the basis of oppressive conduct. The Gees argue that their expectations were substantially defeated by the conduct of the other members of the corporation. They assert that any corporation may be involuntarily dissolved upon the petition of a member. Furthermore, a corporation can be involuntarily dissolved if the acts of the directors or those in control are illegal, oppressive, fraudulent, or it is beneficial to the interests of the members of the corporation that it be dissolved and wound-up. The Gees contend that they maintained their membership in the club for investment purposes after they moved from the Commonwealth. Their expectation was that each of their Certificates of Membership evidenced a $\frac{1}{12}$th interest in the club. Hence, the Gees argue that the club's offer and payment of $200.00 to each of them constituted oppressive conduct, in light of the fact that their $\frac{1}{12}$th shares are worth each in excess of $13,000.00. According to the Gees, they have been prejudiced

by the failure of the trial court to dissolve the corporation and award them $13,000.00 per share for the fair market value of their club memberships.

Our scope of review in equity matters is limited to a determination of whether the trial court abused its discretion or committed an error of law.... Furthermore the decision of the equity court will stand 'if there exists sufficient evidence to justify the findings and logically sound, reasonable inferences and conclusions derived therefrom.' *Quaker City Yacht Club v. Williams,* 59 Pa.Commonwealth Ct. 256, 259, 429 A.2d 1204, 1205 (1981) (citation omitted) (quoting *Groff v. Borough of Sellersville,* 12 Pa.Commonwealth Ct. 315, 317, 314 A.2d 328, 330 (1984)).

■ Section 5981 of the Nonprofit Corporation Law[2] provides:

The court may, upon petition filed by a member or director of a nonprofit corporation, entertain proceedings for the involuntary winding up and dissolution of the corporation, when any of the following are made to appear:

(1) That the objects of the corporation have wholly failed; or are entirely abandoned, or that their accomplishment is impracticable.

(2) That the acts of the directors, or those in control of the corporation, are illegal, oppressive, or fraudulent, and that it is beneficial to the interests of the members that the corporation be wound up and dissolved.

(3) That the corporate assets are being misapplied or wasted, and that it is beneficial to the interest of the members that the corporation be wound up and dissolved.

(4) That the directors or other body are deadlocked in the management of the corporate affairs and the members are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof.

2. 15 Pa.C.S. § 5981.

Involuntary dissolution of a solvent corporation is a drastic measure which should be employed cautiously and only in extreme circumstances. *Cerami v. Dignazio*, 283 Pa.Superior Ct. 424, 424 A.2d 881 (1980).

Our review of the notes of testimony and the trial court's expansive opinion indicates that Judge Kenneth D. Brown correctly resolved all factual and legal issues in the instant matter and, therefore, our opinion, by necessity, parallels that of Judge Brown.

As correctly noted by the trial court, there was absolutely no evidence of record to indicate that the objects of the corporation had totally failed, pursuant to the requirements of 15 Pa.C.S. § 5981(1). The testimony of the officers involved indicated that the purpose of the club has not changed since its inception, the club is financially solvent, and that the purposes of hunting, fishing, social enjoyment and spreading the ideals of sportsmanship are still furthered by the corporate activities.

■ Further, as noted by the trial court, there was no evidence of record to support any conclusion that there had been any waste or misapplication of corporate assets, or that there existed any management deadlock, as would be required by 15 Pa.C.S. §§ 5981(3) or 5981(4). We concur with the trial court's ultimate conclusion that the allegations of oppressive conduct were not sufficient to justify the radical steps of dissolving a viable, not-for-profit corporation. The oppressive conduct consisted of, *inter alia:* a decision to charge $20.00 to any member who was unable to host one meeting per year (this applied to the Gees); not notifying the Gees when memberships became available to purchase; and a selective exclusion of members from the dues requirement.

The trial court's conclusions that the $20.00 surcharge did affect the Gees but was not directed solely at the Gees, was supported by testimony of record, which the trial court found credible. The trial court further accepted the testimony of Carl Laudenslager that, while no one had been

previously expelled for non-payment of dues over a three-year period, there also had been no one who was delinquent in paying dues for a three-year period, other than Carl Gee. Mr. Laudenslager further testified that other individuals had previously been exempt from paying dues. However, these individuals consisted mostly of members who had been drafted into service of the armed forces of the United States. Mr. Laudenslager admitted that his mother, a club member, had been exonerated from paying dues for a period because of financial inability. However, as correctly noted by the trial court, there was no testimony of record that either Lawrence Gee, Florence Gee or Carl Gee had formally applied for exoneration of dues.

We concur in the trial court's conclusion that, while "it is understandable that the Gees, residing in Florida and Georgia, would feel isolated from the other members, not being able to attend meetings or participate in other club activities," this "conduct of the members does not constitute oppressive action so as to require the dissolution of a club which continues to be enjoyed by its local members."

█ This issue of "oppressive conduct" appears to be one of first impression in the Commonwealth. Our research indicates, however, that this issue, insofar as it relates to for-profit corporations, has been extensively dealt with in the appellate courts of New York State. Therefore, we shall adopt New York's definition of oppressive actions which states that: "Oppressive actions refer to conduct that substantially defeats the 'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise." *In the Matter of the Judicial Dissolution of Kemp & Beatley, Inc., Seymour Gardstein et al.,* 64 N.Y.2d 63, 484 N.Y.S.2d 799, 473 N.E.2d 1173 (1984).[3]

---

**3.** *In the Matter of the Judicial Dissolution of Kemp & Beatley,* involved a shareholder's petition to dissolve a New York corporation, alleging oppressive conduct in violation of New York's involuntary dissolution statute, the Business Corporation Law, Section 1104–a, which permits dissolution of a corporation when a corporation's controlling faction is found guilty of illegal, fraudulent or oppressive conduct toward

The Articles of Incorporation of the club clearly state: "There [shall] be no financial gain to the members hereof." The Gees' expectations that their memberships in the club would be held as investments for profit are unreasonable in light of the Articles of Incorporation. Other evidence cited by the trial court indicating that the Gees' investment expectations were unreasonable include the fact that Carl Gee's membership was purchased for him in 1960, 13 years after the club's incorporation for $200.00, the same price which the original members paid, and the fact that all other transfers of membership have been made for the price of $200.00 and have not included any returns, dividends or profits for memberships previously purchased. The totality of the record evidence supports the trial court's conclusions that the Gees' expectations of returns or dividends for their maintenance of a membership in a not-for-profit corporation is clearly unreasonable.

Hence, we conclude that the members of the club have not engaged in oppressive conduct and we, therefore, affirm the order of the trial court denying the Gees' post-trial motions for dissolution of the club.

## ORDER

AND NOW, this 24th day of February, 1992, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter is affirmed.

complaining shareholders. The New York appellate court developed its definition of oppression citing legal and scholarly authorities.