**DYLE E. BRAY POST NO. 739,
Veterans of Foreign Wars
of the United States,**

v.

**DYLE E. BRAY POST HOME
ASSOCIATION, INC.,
Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 6, 1995.

Decided Aug. 7, 1995.

Robert M. Davison, for appellant.

Ronnie L. Creazzo, for appellee.

Before PELLEGRINI and NEWMAN, JJ., and KELTON, Senior Judge.

NEWMAN, Judge.

Dyle E. Bray Post Home Association (the Association) appeals from an order of the Court of Common Pleas of Northampton County (trial court) that overruled the Association's exceptions to a master's report and incorporated the findings and conclusions set forth therein. The trial court's order requires, *inter alia*, that the Association conform with the bylaws of Dyle Bray Post No. 739 (the Post). We reverse.

The Post and the Association are both nonprofit corporations with their principal place of business at 202 Veterans Road, Bangor, Northampton County. The Post was incorporated on December 13, 1937. It is an affiliate of the Veterans of Foreign Wars of the United States (VFW), and its membership is limited to individuals who have served overseas in the armed forces. The VFW is a fraternal organization whose goals include assistance to the widows and orphans of fallen comrades and the fostering of patriotism.

The Association is a social organization established to promote the interests of ex-servicemen and women and their friends and supporters. It was incorporated on October 7, 1937. The Association owns the building where the Post meets. It holds a liquor license and operates a bar and a catering facility on the premises. Its membership is open to Post members and any citizen twenty-one years of age or older. Members of the Post are not automatically members of the Association. They must apply for membership and pay annual dues like the other members. Pursuant to the Association's bylaws, its Board of Directors consists of twelve individuals, eight of whom must be members of the Post.

In October 1992, the Post approved new bylaws in conformance with the requirements of the national VFW. Article VII of the bylaws states in relevant part:

Sec. 1 Any activity, unit or clubrooms sponsored, conducted or operated by the Post, incorporated separately from the Post or unincorporated, shall be at all times under the direct control of the Post.

Sec. 2 All funds derived from any of the above shall be in the custody of the Post Quartermaster.

Sec. 3 All money, property and assets of every kind as well as all records in connection therewith used, held and owned by any of the above activities is the property of the Post and must be placed in the care and custody of the Post Quartermaster.

Accordingly, the Post requested that the Association amend its articles of incorpo-

ration to provide for the transfer of its assets and records to the Post. Because the Association would not cooperate, the Post filed a complaint in equity against the Association on April 19, 1993, to compel compliance with the Post's bylaws.

The trial court appointed a master, who held hearings on July 8, 1993 and July 27, 1993. On October 5, 1993, the master filed a report concluding that the Association is obligated to follow the bylaws of the Post and the national VFW organization. Therefore, the report recommended that the trial court order the Association to transfer its assets to the Post. It further recommended that an audit be made of the Association's books to determine if any irregularities in its bookkeeping system resulted in personal gain for any individuals.

The Association filed timely exceptions to the master's report. By order dated June 9, 1994, the trial court overruled the Association's exceptions and adopted the findings and conclusions set forth in the report. The Association appeals from that order.

■ On appeal to this court, the Association raises the following two issues: (1) whether a non-profit corporation may require a second non-profit corporation to transfer assets based on a change in the first corporation's bylaws; and (2) whether a court may order the dissolution of a non-profit corporation on the basis of a petition filed by another non-profit corporation, where the petitioning entity alleges that it needs the assets of the other corporation to satisfy its own corporate purposes.[1]

With regard to the first issue, the Association notes that the master's report, which the trial court adopted, cites no authority and sets forth no reasoning for the conclusion that the Association must transfer its assets to the Post.

The Post and the Association are separate entities, both regulated by the Nonprofit Corporation Law of 1988 (Law), 15 Pa.C.S. §§ 5101—6162. The Association argues that because it is a separate entity, it is not bound by the Post's bylaws. In support of this position, it cites Section 5505 of the Law, which states:

> Except as otherwise provided by Section 5173 (relating to personal liability of directors) or any similar provision of law, bylaws of a nonprofit corporation shall operate only as regulations among the members of the corporation, and shall not affect contracts or other dealings with other persons, unless those persons have actual knowledge of the bylaws.

15 Pa.C.S. § 5505.

■ With regard to the first part of the statute, the Association argues that the Post's bylaws only regulate its internal operations. Therefore, the Post's bylaws cannot require the Association, which is a separate nonprofit corporation, to transfer its assets. We agree. With regard to the second part of the statute, the Association's knowledge of the bylaws is not dispositive because the Post amended them during the course of its dealings with the Association. For this reason it would be inequitable to hold that the Association's mere knowledge of these changes requires it to submit to them.

The court adopted the master's conclusion and held that the transfer of assets from the Association to the Post could be effected pursuant to Section 5930 of the Law (Voluntary transfer of corporate assets), 15 Pa.C.S. § 5930.[2] This section provides in relevant part:

> (a) General rule. A nonprofit corporation shall not sell, lease away or exchange all, or substantially all, its property and assets, with or without good will, unless and until a plan of sale, lease or exchange of assets with respect thereto shall have been

---

1. Our scope of review in an equity matter is limited to determining whether: (1) the chancellor's findings are supported by substantial evidence; (2) an error of law was committed; or (3) the chancellor committed an abuse of discretion. *Richland Township v. Prodex, Inc.,* 160 Pa.Commonwealth Ct. 184, 634 A.2d 756 (1993).

2. The Association did not file an exception to this conclusion of law with the trial court. However, because the Association filed an exception to the conclusion of law that it must conform to the bylaws of the Post and transfer its assets to the Post, it has preserved for appellate review the issue of the applicability of these statutes.

adopted by the corporation in the manner provided in this subchapter with respect to the adoption of a plan of merger. In order to make effective any plan of sale, lease or exchange of assets so adopted it shall not be necessary to file any articles or other document in the Department of State, but the corporation shall comply with the requirements of section 5547(b) (relating to nondiversion of certain property).

(b) Exceptions. Subsection (a) of this section shall not apply to a sale, lease away or exchange of all, or substantially all, the property and assets of a corporation when made in connection with the dissolution or liquidation of the corporation. Such a transaction shall be governed by the provisions of Subchapter F (relating to voluntary dissolution and winding up) or Subchapter G (relating to involuntary liquidation and dissolution), as the case may be.

15 Pa.C.S. § 5930(a), (b).

■ Section 5930 of the Law is inapplicable to the instant case because the transfer of assets from the Association to the Post, as ordered by the trial court, is not voluntary. Furthermore, as we will discuss below, Section 5930 does not apply because the trial court's order would have the effect of an involuntary dissolution. Section 5930, by its own terms, is inapplicable in that situation.

With regard to the second issue raised by the Association, we note that the transfer of all of its assets and earnings to the Post would essentially dissolve the Association. Without a building, and without the ability to sponsor activities and raise funds, the Association would cease to exist for all practical purposes.

In *Gee v. Blue Stone Heights Hunting Club, Inc.*, 145 Pa.Commonwealth Ct. 658, 664, 604 A.2d 1141, 1144 (1992), this court noted that, "the involuntary dissolution of a solvent corporation is a drastic measure which should be employed cautiously and only in extreme circumstances." Dissolution of a nonprofit corporation is provided for by Section 5981 of the Law (Proceedings upon petition of member, etc.), which states:

The court may, upon petition by a member or director of a nonprofit corporation, entertain proceedings for the involuntary winding up and dissolution of the corporation, when any of the following are made to appear:

(1) That the objects of the corporation have wholly failed; or are entirely abandoned, or that their accomplishment is impracticable.

(2) That the acts of the directors, or those in control of the corporation are illegal, oppressive, or fraudulent, and that it is beneficial to the interest of the members that the corporation be wound up and dissolved.

(3) That the corporate assets are being misapplied or wasted, and that it is beneficial to the members that the corporation be wound up and dissolved.

(4) That the directors or other body are deadlocked in the management of corporate affairs and the members are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof.

15 Pa.C.S. § 5981.

■ Initially we note that the petitioning party is not a member or director of the Association, but is a separate corporation. Therefore, the Post does not have standing to seek dissolution of the Association. Even if the Post were a proper petitioner, the criteria for an involuntary dissolution have not been met. Our review of the record indicates that there was no evidence that the Association is incapable of promoting the interests of ex-servicemen and women and their friends and supporters. It is equally clear that the directors have not acted in a fraudulent or illegal manner, nor are they so deadlocked as to be incapable of managing the corporation.

With regard to misapplication of corporate assets, there was testimony regarding mismanagement by the Association's bookkeeper, that checks were returned for insufficient funds and an electric bill of $200.00 was not paid. However, there was also testimony that the Association owns real property worth hundreds of thousands of dollars, as well as certificates of deposit and bank accounts. Our review of the evidence indicates that an insufficient factual basis exists upon

which to form a conclusion that the drastic remedy of involuntary dissolution is appropriate in this case.

For these reasons, we reverse the order of the trial court.

*ORDER*

AND NOW, August 7, 1995, we reverse the order of the Court of Common Pleas of Northampton County.