718 A.2d 276

PENNSYLVANIA LIQUOR CONTROL BOARD, Appellee,

v.

RICHARD E. CRAFT AMERICAN LEGION
HOME CORPORATION, Appellant.

Supreme Court of Pennsylvania.

Argued March 10, 1998.

Decided Sept. 30, 1998.

Reargument Denied Dec. 1, 1998.

Jack W. Cline, Mercer, for Richard Craft American Legion Home Corp.

Rodrigo Diaz, Harrisburg, for Pennsylvania Liquor Control Bd.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

Appellant raises two issues in this appeal: whether the Commonwealth Court applied the correct standard of review to the trial court's decision and whether appellant is a "subordinate unit" within the meaning of the Pennsylvania Liquor Code, 47 P.S. § 4-461.1. Because we find that the Commonwealth Court misapplied the appropriate standard of review and that appellant is a "subordinate unit" within § 4-461.1, we reverse the order of the Commonwealth Court.

Appellant is the home corporation of American Legion Richard E. Craft Post 584 located in Springfield Township, Mercer County.[1] Appellant holds title to the real estate upon which the post is located, provides a facility for the post to

---

1. The home corporation was organized in 1954 to shield the American Legion Post from liability for injuries on the premises. Appellant is affiliated with the American Legion Post but did not receive a charter

conduct its business affairs, and serves as the post's fundraising arm. To be a member of the post, one must be a veteran; one need not be a veteran to belong to the home corporation. The American Legion is a national organization headquartered in Minnesota with Pennsylvania headquarters in Harrisburg. Both the national and state American Legion organizations recognize home corporations as part of the Legion structure.

In 1995, appellant applied for a liquor license in Springfield Township. At that time, Springfield Township had already exceeded of its quota for liquor licenses under 47 P.S. § 4-461.[2] Therefore, appellant applied for a license pursuant to 47 P.S. § 4-461.1 which permits the PLCB to issue licenses to incorporated units of national veterans' organizations in municipalities where the number of licenses exceeds the limitation set forth in § 4-461.[3]

At a hearing before appellee on the application, appellant presented the testimony of the its then-president who testified that appellant could not operate independently of the post, that appellant and the post hold separate elections, that the voting members of appellant and the post are identical, and that an individual who had not served in active war duty could be a social member of appellant but that individual could not be a member of the post. On January 19, 1996, appellee issued an opinion ruling that appellant does not meet the requirements of § 4-461.1 because it is not an incorporated post, branch, camp, detachment, lodge or other subordinate

from the national organization and has no direct link to the national organization. The post has a charter from the national organization and is directly under its control. The post and the home corporation have separate officers, hold separate meetings and elections and pay separate dues. While they may have some overlapping members, only veterans who served in the military during an armed conflict can be members of the post; anyone can join the home corporation.

**2.** Section 4-461 permits one liquor license for every three thousand inhabitants in a municipality, exclusive of licenses granted to airports restaurants, municipal golf courses, hotels, privately-owned public golf courses and units of nationally chartered clubs.

**3.** "National veterans' organization" is defined in § 4-461.1 as "any veterans' organization having a national charter." "Incorporated unit" is defined as "any incorporated post, branch, camp, detachment, lodge or other subordinate unit of a national veterans' organization."

unit of the post because it is not a "direct" subordinate unit. Appellant appealed the decision to the common pleas court pursuant to 47 P.S. § 4-464.[4]

The trial court conducted a *de novo* hearing at which the new president of the appellant's board testified. He testified that the former president who testified before appellee did not have a full understanding of the relationship between appellant and the post. He stated that all post members are members of appellant and that appellant has approximately 250 members, half of whom are veterans who served in active combat and are therefore regular voting members and half of whom did not serve in active combat and are therefore non-voting social members. Only regular members have the right to vote and hold positions on appellant's board. He further testified that if the post were disbanded or its charter revoked, appellant would cease to exist.

The trial court reversed appellee's order and held that appellant was entitled to a liquor license pursuant to § 4-461.1. The trial court made independent findings of fact that home corporations are recognized by the national and state organizations as part of the structure of American Legion posts, that the national and state organizations exercise control over both the posts and home corporations directly through the posts' charters, and that appellant was incorporated in 1954 for the benefit of the post and is limited to acting in furtherance of the post. Based upon these findings of fact, the trial court held that appellant was a subordinate unit within the meaning of § 4-461.1 and that the Board erred in finding that it was necessary for a party to be a "direct" subordinate unit in order to qualify for a liquor license under § 4-461.1.

Appellee then appealed to the Commonwealth Court arguing that the trial court erred in making its own findings of fact where the evidence presented before the trial court was not substantially different from that presented before appellee

---

4. Section 4-464 permits a party aggrieved by the grant or denial of a liquor license to appeal to the court of common pleas within twenty days of the grant or denial.

and that the trial court erred in determining that appellant was a subordinate unit where appellee's contrary finding was not clearly erroneous.

In *Pennsylvania State Police v. Cantina Gloria's Lounge, Inc.,* 536 Pa. 254, 259, 639 A.2d 14, 16 (1994), we set forth the correct standard for a trial court's review of a PLCB refusal to grant a liquor license:

> We have held that an appeal from a decision of the Board pursuant to this language required the court of common pleas to conduct a de novo review, and in the exercise of its statutory discretion, to make findings and conclusions. We also held that this language permitted a court of common pleas, based upon its de novo review, to sustain, alter, change or modify a penalty imposed by the Board whether or not it makes findings which are materially different from those found by the Board. *Adair v. Liquor Control Board,* 519 Pa. 103, 546 A.2d 19 (1988).

Here, the Commonwealth Court reversed the trial court based on its finding that the trial court's findings of fact were not substantially different from those found by appellee. Clearly, pursuant to our holding in *Cantina Gloria's Lounge,* the trial court may alter the decision of the PLCB even if its findings of fact are identical to those made by the PLCB. Thus, the trial court here correctly conducted a de novo hearing, made its own findings of fact, and reached its own conclusions based upon those findings, and the Commonwealth Court applied an incorrect standard of review to the trial court's decision.

Appellee argues that its interpretation of the phrase "subordinate unit" contained in § 4–461.1 is entitled to deference because it is not clearly erroneous and cites *American Airlines, Inc. v. Commonwealth, Board of Finance and Revenue,* 542 Pa. 1, 665 A.2d 417 (1995), in support of the proposition. In *American Airlines,* we held that "an administrative agency's interpretation of a statute is given controlling weight unless it is clearly erroneous." *Id.* at 9, 665 A.2d at 420.

Appellee in this case found that a home corporation is not included within the scope of the phrase "subordinate unit" and

based this conclusion on the fact that the legislature did not specifically include home corporations in the list of the entities entitled to liquor licenses under § 4–461.1 while the legislature specifically did include home corporations in other enactments.[5] In addition, appellee found that a home corporation is different in nature than the other entities included in the statute, and the term "other subordinate unit" indicates that this other unit must be similar in type to the listed entities. The Commonwealth Court also concluded that an entity must be a "direct" subordinate unit to fit within § 4–461.1.

▆▆▆ We conclude that this is a clearly erroneous reading of the statute in question. In § 4–461.1, the legislature defined "incorporated unit of a national veterans' organization" to include several types of entities related to the veterans' organization and then concluded with the catchall phrase "or other subordinate unit." Home corporations are recognized by both the national and state American Legion organizations as subordinates of the individual posts. It is commonplace for an American Legion post to organize a home corporation to shield it from liability. The home corporation is completely controlled by the American Legion post and is therefore clearly subordinate to the post. Further, contrary to appellee's decision, the statute does not require that the subordinate unit be a "direct" subordinate unit. A home corporation is precisely the type of entity that falls within the scope of the phrase "subordinate unit" as used in § 4–461.1.[6]

Accordingly, we reverse the decision of the Commonwealth Court.

NEWMAN, J., circulated a dissenting opinion in which NIGRO, J., joined.

5. The term "home association" is included in the definition of veterans' organizations used in the Local Option Small Games of Chance Act, 10 P.S. § 313.

6. Senate Bill 1164, signed into law by the Governor on June 18, 1998, specifically includes a home corporation as an entity that falls within the scope of the liquor license exception of § 4–461.1 provided that certain conditions are met. Therefore, this opinion is in accord with this new legislation.

NEWMAN, Justice, dissenting.

I would affirm the Commonwealth Court because I accept the Pennsylvania Liquor Control Board's ("PLCB") logical argument of statutory construction, and believe that the principle that courts should defer to an administrative agency's interpretation of the regulations that it is entrusted to enforce applies.

At the time the Richard E. Craft American Legion Home Corporation ("Home Corporation") applied for a liquor license, Section 4–461.1 of the Liquor Code [1] provided:

Section 4–461.1. Incorporated units of national veterans' organizations.

(a) The board shall have the authority to issue new licenses to incorporated units of national veterans' organizations, as defined herein, in municipalities where the number of licenses exceeds the limitation prescribed by section 461.

(b) The term "national veterans' organization" shall mean any veterans' organization having a national charter.

The term "incorporated unit of a national veterans' organization" shall mean any incorporated post, branch, camp, detachment, lodge or other subordinate unit of a national veterans' organization having one hundred or more paid up members and organized for a period of at least one year prior to filing the application for a license.

(c) When the charter of an incorporated unit of a national veterans' organization is revoked, the retail license of the organization shall be suspended or revoked. The retail license of an incorporated unit of a national veterans' organization is not transferable to any other organization or person.

47 P.S. § 4–461.1 (amended 1998).

The PLCB argues that because the phrase "or other subordinate unit" follows the list of "post, branch, camp, detachment, lodge" in the definition of "incorporated unit of a national veterans' organization," it merely constitutes a catch-

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101–9–902.

all provision intended to anticipate Congress' creation of a national veterans' organization that may label its local organizations something other than a "post, branch, camp, detachment" or "lodge." Following the PLCB's interpretation, we do not reach the "or other subordinate unit" catchall clause because the American Legion ("Legion") has already incorporated units that fit the definition of an incorporated unit of a national veterans' organization: namely, a Legion post. As discussed below, I find this a reasonable reading of the statute, and one that accords with the structure of the Legion.

The following letter from the Judge Advocate of the Pennsylvania Department of the Legion, dated May 4, 1995, and directed to all Legion post commanders, illustrates why the Home Corporation, is not an "incorporated unit" of a national veterans' organization:

> As you are all aware, the Pennsylvania Liquor Control Board is putting more and more emphasis on enforcement of its regulations. Therefore, it is absolutely essential that you all understand the purposes of Home Association, membership status in Home Associations, and in what name the Liquor License should be held. Any Post which has real estate and has a club license which dispenses alcohol should separate the ownership of the real estate from ownership of the liquor license. The real estate should be owned by the Post. The Home Association should own the Liquor License. The real estate should be rented to the Home Association. By doing this, the Post and the real estate are insulated from liability in the event of a tragedy resulting from consumption of alcohol.
>
> *Those Home Associations, or Posts, which hold a liquor license as a result of its affiliation with The American Legion may have only one class of member and that is a full member. There can be no social members.*

Reproduced Record at 72a (emphasis added).

Despite this directive from the Pennsylvania Department, which has supervisory control over all Legion posts in this Commonwealth, the Home Corporation attempted to obtain a

Section 4–461.1 liquor license even though approximately half of its members were "social" (i.e., nonveteran) members. Why is the Home Corporation at liberty to disregard the Pennsylvania Department's "order"? The answer is that, contrary to the Majority's holding, the Home Corporation is not an "incorporated unit" of the Legion.

In order to understand why the Home Corporation is not an "incorporated unit" of a national veterans' organization, it is necessary to compare how the Home Corporation came into existence with how the Richard E. Craft American Legion Post No. 584 ("Post") was created. The Post was instituted by a charter issued in 1954 by the national headquarters of the Legion—a national veterans' organization authorized by federal statute.[2] No one may be a member of the Post who did not serve in the armed forces during wartime.[3] Moreover, the national headquarters of the Legion has the power to eliminate the Post—to end its existence through the revocation of the charter.[4]

By comparison, the Home Corporation is a creature of Pennsylvania's Nonprofit Corporation Law,[5] and derives its existence from a charter issued by the Court of Common Pleas of Mercer County in 1954. Unlike the Post, which can be terminated by the unilateral action of the national headquar-

**2.** Congress created the American Legion as a federally chartered corporation in 1919. *See* 36 U.S.C. § 41 *et seq.* I note that, among the powers granted to the American Legion, is the power "to establish State and Territorial organizations and local chapter or post organizations ...." 36 U.S.C. § 44.

**3.** This restriction is in accordance with the rules of the Legion, and with the current requirements of federal law. *See* 36 U.S.C. § 45. This prohibition also explains why the Home Corporation, which has social members, falls outside of the corporate structure of the Legion, and why the Post, all of whose members must be veterans, is the only entity that qualifies as the "incorporated unit" of the Legion.

**4.** With respect to Section 4–461.1 liquor licenses, Pennsylvania's Liquor Code makes provision for this possibility: in the event that the national headquarters of the Legion decommissions a particular Legion post, that post's Section 4–461.1 liquor license is automatically rescinded. 47 P.S. § 4–461.1(c).

**5.** Appellant was incorporated under the Nonprofit Corporation Law of 1933, Act of May 5, 1933, P.L. 289, No. 105.

ters of the Legion, the Home Corporation can be terminated only in the manner provided by the Pennsylvania Nonprofit Corporation Law.[6]

I made this last point as the author of the Commonwealth Court's opinion in *Dyle E. Bray Post No. 739 v. Dyle E. Bray Home Association, Inc.*, 663 A.2d 300 (Pa.Cmwlth.1995) (affirming VFW home association is separate nonprofit entity from VFW post), which underscores the importance of the distinction between the post and an organization affiliated with the post. The Majority assumes that, here, the Post "controls" the Home Corporation because Post members control the Home Corporation's board of directors. That is not necessarily a safe assumption, as the situation that occurred in *Dyle E. Bray Post No. 739* demonstrates, where the home association resisted attempts by the post with which it was affiliated to transfer assets to the post, to the point of litigating that dispute through the appellate courts.[7]

Contrary to the Majority's statement in footnote six, its resolution does not accord with the recent amendments to the Liquor Code. Pursuant to that legislation, Section 4–461.1 now provides:

Section 461.1. Incorporated Units of National Veterans' Organizations.

(a) The board shall have the authority to issue new licenses to incorporated units of national veterans' organizations, as defined herein, in municipalities where the number of licenses exceeds the limitation prescribed by section 461.

6. The current version of Pennsylvania's nonprofit corporations law is the Nonprofit Corporation Law of 1988, 15 Pa.C.S. §§ 5101–6162.

7. The Majority's statement that "[t]he home corporation is completely controlled by the American Legion post and is therefore clearly subordinate to the post," does not address the issue of whether the Home Corporation qualifies as an incorporated unit of a national veterans' organization. Assuming that the "or other subordinate unit" clause of Section 4–461.1(b) applies, it is subordination to the national organization—and not the local post—that matters. However, I accept the PLCB's argument that the "or other subordinate unit" clause of Section 4–461.1(b) does not apply, because the only incorporated unit of the American Legion is a post.

(b) The term "national veterans' organization" shall mean any veterans' organization having a national charter.

The term "incorporated unit of a national veterans' organization" shall mean any incorporated post, branch, camp, detachment, lodge or other subordinate unit of a national veterans' organization having one hundred or more paid up members and organized for a period of at least one year prior to filing the application for a license. The term does not include auxiliaries, "sons of" or other similar organization.

The term "affiliated organization" shall mean home associations, home corporations, auxiliaries, "sons of" or similar organizations which are directly affiliated with an incorporated unit [of] a national veterans' organization. An affiliated organization must meet the definition of a club set forth in section 102, except that:

(1) if incorporated, the affiliated organization need not have been in continuous existence for at least one year prior to its application; or

(2) if unincorporated, the affiliated organization need not have been in continuous existence for at least ten years prior to its application.

(c) When the charter of an incorporated unit of a national veterans' organization is suspended or revoked, the club license of the organization shall also be suspended or rescinded. The club license of an incorporated unit of a national veterans' organization is not transferable to any other organization or person, except as provided in this section.

(d) An incorporated unit of a national veterans' organization may transfer its club license to its affiliated organization as long as, in addition to fulfilling all the requirements pertaining to the transfer of club licenses, the state department of the national veterans' organization provides the board with written approval for such a transfer. The license shall be suspended or rescinded upon the suspension or revocation of the charter of the affiliated incorporated unit of the national veterans' organization. The license shall also be

rescinded upon request of the state department of the national veterans' organization or if the affiliated organization's affiliation with the incorporated unit of the national veterans' organization is severed.

(e) Only one club license may be issued to the incorporated unit of the national veterans' organization, and the board may not issue a license to an incorporated unit of a national veterans' organization if any of the unit's affiliated organizations holds a club license.

(f) [omitted].

(g) [omitted].

1998 Pa. Legis. Serv. Act 1998–86, section 11 ("Act 86").

Act 86 authorizes the *transfer* of a Section 4–461.1 liquor license to an "affiliated organization" —defined to include home corporations—where those transfers previously were forbidden. *Compare* 1998 Pa. Legis. Serv. Act 1998–86 ("Act 86") *with* 47 P.S. § 4–461.1(c) (amended 1998). Act 86 did not change the requirement that in order to *apply* for a Section 4–461.1 liquor license, the entity must qualify as an "incorporated unit of a national veterans' organization." *Id.* In this situation, the Home Corporation applied for its own Section 4–461.1 license, arguing that it qualified as an "incorporated unit" of a national veterans' organization; it did not request a transfer of an existing license.

Indeed, to the extent that Act 86 changed the definition of "incorporated unit," these changes contradict the majority's holding. Act 86 added the following exclusion to the definition: "[t]he term does not include auxiliaries, 'sons of' or other similar organizations." 1998 Pa. Legis. Serv. Act 1998–86, section 11. Curiously, the legislature included "auxiliaries, 'sons of,' and other similar organizations"—along with "home associations" and "home corporations"—when it defined those "affiliated organization[s]" eligible for a Section 4–461.1 license transfer. *Id.* The legislature's failure to include home corporations within the definition of an "incorporated unit of a national veterans' organization," when the legislature expressly included home corporations in the definition of "affiliated

organization" for the purposes of Section 4–461.1 liquor license transfers, suggests that home corporations do not currently qualify as incorporated units of national veterans' organizations. *See* 1 Pa.C.S. § 1921(c)(5). Moreover, Act 86's provision that Section 4–461.1 liquor licenses may be *transferred* to affiliated organizations demonstrates a legislative intent not to increase the total number of Section 4–461.1 liquor licenses, since those transfers will not create new licenses, and because the legislature chose to restrict, rather than expand, the definition of what qualifies as an incorporated unit of a national veterans' organization.[8]

Finally, I do not believe that the Commonwealth Court's statements regarding the appropriate standard for a trial court's de novo review of a PLCB decision affected its proper disposition of this case. The court stated:

In any event, whether the Board's or trial court's version of the findings of fact are used is somewhat irrelevant because the facts are not in dispute; only the legal inferences to be drawn from those facts leading to the resolution of the legal issue—whether or not the Home Corporation constitutes a "subordinate unit" of a national veterans' organization.

**8.** The recent legislation makes this intent clear by providing that "only one club license may be issued to the incorporated unit of the national veterans' organization, and the board may not issue a license to an incorporated unit of a national veterans' organization if any of the unit's affiliated organizations holds a club license." 1998 Pa. Legis. Serv. Act 1998–86, section 11. The Majority's decision today may interfere with this portion of Act 86, because if a home corporation qualifies as an incorporated unit of a national veterans organization, it will qualify for its own Section 4–461.1 liquor license, and the above-quoted restriction may not apply. For example, while a home corporation is specifically listed as an "affiliated organization" of an incorporated unit of a national veterans' organization, a Legion post is not specifically listed as an "affiliated organization." In other words, if a Legion post held a Section 4–461.1 liquor license, its home corporation could also obtain one because: (1) it would qualify as an incorporated unit of a national veterans' organization, and; (2) it has a plausible argument that, because the term "affiliated organization" does not specifically include "posts," its Legion post does not constitute an "affiliated organization." This problem further highlights the majority's error: a home corporation will be both an "affiliated organization" *and* an incorporated unit of a national veterans' organization.

*Pennsylvania Liquor Control Bd. v. Richard E. Craft American Legion Home Corporation,* 686 A.2d 437, 440 (Pa.Cmwlth. 1996). Even if one accepts the trial court's more favorable findings of fact, that court's legal conclusion that the Home Corporation qualified as an "incorporated unit of a national veterans' organization" was incorrect. Assuming that there is a substantial degree of control by the Post's members over the affairs and operation of the Home Corporation, indeed if the Home Corporation's membership were limited exclusively to Post members, nevertheless it is the Post, and only the Post, which qualifies as the "incorporated unit" of the American Legion.

Accordingly, I dissent.

NIGRO, J., joins in this dissent.