# Beaners Restaurant, Inc. v. Commonwealth, Liquor Control Board

196

*Michael Dautrich*, for plaintiff.
*Peter Yoon*, for defendant.

TUNNELL, *J.*, May 6, 2014—On November 20, 2013, the Pennsylvania Liquor Control Board (hereinafter "PLCB" or "Board") refused to renew the restaurant liquor license and attendant amusement permit of Beaners Restaurant, Inc. (hereinafter "Beaners" or "Licensee") and Beaners filed a timely appeal to this court. Upon consideration of the evidence presented at the hearing on April 17, 2014, which included the record from the administrative hearing, the court finds that Beaners' licensing history and related difficulties do not amount to an abuse of the licensing privilege requiring non-renewal of its licenses and makes the following:

## FINDINGS OF FACT

1. Beaners Restaurant, Inc. is a Pennsylvania corporation located at 212 Bridge Street in Phoenixville, Pennsylvania. (R. 4 at 229)[1]. Restaurant Liquor License No. R-927 and its

---

1. At the *de novo* hearing, the PLCB introduced the notes of testimony from the administrative hearing in June, 2013, which were marked as exhibit R-4. Unless noted otherwise, references herein to "testimony" by witnesses refers to the testimony offered to this court at the April 14, 2014 hearing.

attendant amusement permit have been issued for the premises located at 208-212 Bridge Street, Phoenixville, Pennsylvania ("the licensed premises"). (R. 6 at 1.)

2. Beaners, as the licensed premises is known, opened in June, 2009. (R. 4 at 229.)

3. Zachary Hoffman ("Hoffman") is the president of Beaners. Hoffman purchased the liquor license at issue, the real estate and the rights to Beaners, the shares of Beaners Restaurant Incorporated in June, 2011. (*Id.*)

4. Two establishments, owned by the same corporation, make up Beaners. It serves alcohol under one liquor license. (R. 4 at 233.)

5. The first floor houses a restaurant known as Bistro on the Bridge ("Bistro"). Bistro has a formal dining area for approximately seventy (70) people. It also has a sports bar area with high top tables, televisions and a shuffleboard table. (*Id.*)

6. The lower level's total capacity is approximately three hundred twenty-five (325) people. (R. 4 at 247.)

7. The kitchen and restrooms are also located on the first floor. (*Id.*)

8. Patrons access the first floor through the front door located on Bridge Street, one of the main thoroughfares in downtown Phoenixville.

9. Bistro has an outdoor eating area on Bridge Street for patrons. (*Id.* at 239.)

10. Bistro operates Monday through Thursday from 4 pm until closing and Friday, Saturday and Sunday from 11:30 am until closing. (*Id.* at 234.) Hoffman testified that closing time was 2:00 am.

11. The second floor of the licensed premises houses Club 212. One can access Club 212 from stairs located at the rear of the first level or from a back door on Prospect Street. (*Id.*)

12. The maximum capacity of the upstairs club is between four hundred (400) and five hundred (500) people. (R. 4 at 247.)

13. Club 212 is open to the public on Friday and Saturday nights only. (*Id.* at 236). It opens on Thursday nights for patrons who wish to participate in salsa lessons for a fee. (*Id.*)

14. At one time, on an occasional Sunday evening, Club 212 hosted "teen nights." On those nights, it would open its doors to individuals ages fourteen (14) to nineteen (19). Companies that had relationships with groups such as MADD, SADD and Drug Free America organized the events. (*Id.* at 234-35.)

15. Hoffman testified that because of problems that developed during teen nights, Beaners voluntarily discontinued the program. Teen nights have not been held at the licensed premises for over a year.

16. Beaners is located in the heart of downtown Phoenixville in the 200 block of Bridge Street. It is the largest restaurant on Bridge Street. (*Id.* at 242.)

17. E. Jean Krack, the Borough Manager for Phoenixville, testified that Beaners is the one of the largest businesses in the Borough of Phoenixville, second to the Colonial Theater.

18. William Mossman, Chief of Police for Phoenixville, testified that the downtown area (Bridge Street) where Beaners is located has five (5) other licensed establishments.

19. Chief Mossman testified that on a given night there may be as many as one thousand people exiting the various establishments along Bridge Street and within the surrounding area.

20. Mr. Krack, Chief Mossman and Jessica Capistrant, the Director of the Phoenixville Chamber of Commerce, each testified that Hoffman has a well run establishment and works well with Phoenixville's civic leaders as part of an overall effort to improve his establishments and the downtown Phoenixville area.

21. Beaners employs between forty-five (45) and sixty (60) employees. Approximately twelve (12) to fourteen (14) of its employees are security personnel. (R. 4 at 229-230.)

22. On Friday and Saturday nights, it staffs between eight (8) and twelve (12) security employees in conspicuous uniforms. (*Id.* at 230.)

23. Beaners has a written security policy, and it has signage throughout the premises notifying patrons of its house rules. (*Id.* at 232; Ex. L-1.)

24. Beaners enforces a dress code for patrons entering its nightclub. (*Id.* at 233; Ex. L-2.)

25. Beaners has sixteen (16) security cameras at the establishment, fourteen (14) of those are inside. The cameras were installed in 2010. (R. 4 at 299-300.)

26. Club 212 uses DJ entertainment on Friday and Saturday nights. Bistro has acoustic performers a few times per month. (R. 4 at 325.)

27. On February 6, 2013, Beaners filed an untimely application for the renewal of Restaurant Liquor License No. R-927 beginning April 1, 2013 and ending March 31, 2015. (R. 6 at 2, R. 4 at Ex. B-1.)

28. By letter dated March 18, 2013, the PLCB informed Beaners that a preliminary review of its history of operation indicated a potential abuse of the licensing privilege and that a hearing would be held to determine whether the following

objections warranted nonrenewal of the license for the license period effective April 1, 2013:

1. It is alleged that you have abused your licensing privilege, and pursuant to Section 470 of the Liquor Code (47 P.S. § 4-470), you may no longer be eligible to hold a license based upon:

a) [V]iolations of the Liquor Code relative to Citation Numbers 12-1002, 11-1829, 11-1062 and 10-0402.

b) The improper conduct of your licensed establishment as there have been approximately twenty-three (23) incidents of disturbances at or immediately adjacent to your licensed establishment during the time period April 2011 to present reported to the Phoenixville Police Department. This activity includes but is not limited to minors, fights, assaults, weapons, drugs, visibly intoxicated patrons, loud music/noise and disorderly operations.

2. The Bureau of Licensing has rejected the late-filed renewal application pursuant to Section 470(a) of the Liquor Code (47 P.S. § 4-470(a)).

(R. 4 at 5; Ex. B-2).

29. Furthermore, the PLCB objected to the renewal of its amusement permit based upon the following:

1. It is alleged that pursuant to Section 478 of the Liquor Code [47 P.S. § 4-478], you have abused your privilege by permitting the use of speakers or similar devices causing loud music to emanate from the licensed premises in violation of Section 5.32(a) [of the Board's Regulations (40 Pa. Code § 5.32(a))], resulting in Citation Numbers 12-1002, 11-1829, 1-1062 and 10-0402.

2. The operating history of the licensed premises in that there have been approximately three (3) incidents of loud

music during the time period April 2011 to present reported to the Phoenixville Police Department.

(*Id.*)

30. By letter dated April 15, 2013, the PLCB informed Beaners that a hearing was scheduled for April 30, 2013, for the purpose of taking testimony about the aforementioned objections. The hearing was rescheduled for June 4, 2013. (*Id.*)

31. Following the hearing, the examiner recommended non-renewal of Beaners' restaurant license and amusement license. (R. 3.)

32. The PLCB concurred with that recommendation and by Order dated November 20, 2013, the PLCB refused Licensee's renewal application. (R. 6.) Beaners timely appealed the matter to this court.

33. A *de novo* hearing was held on April 17, 2013.

34. Prior to June, 2013, Beaners had been the subject of four (4) adjudicated citations relating to fourteen (14) violations of the Liquor Code spanning four (4) years. (R. 6 at 4-6.)

35. More than half of those violations occurred prior to Hoffman's ownership, which began in June, 2011. All but one (1) of the citations related to excessive noise from the establishment; none of the violations involved acts of violence. (*Id.*)

36. The incidents for which Beaners received citations after Hoffman's ownership occurred during one weekend in September, 2011 and May, 2012 and two days in April, 2012. (*Id.*) There were no citations after May 19, 2012 introduced into evidence at the administrative hearing.

37. Hoffman testified consistent with the testimony of Officer Bryan at the administrative hearing, that following

complaints about noise in April 2012, Beaners closed the windows to Club 212 and worked to secure them so that in the future patrons could not open the windows from inside Club 212.

38. This action improved noise levels in the surrounding area. Neighbors Edward Koch and Stephen Baker testified that noise levels had improved at Beaners and they did not recall making further calls to the police for noise related issues after mid-2012.

39. Hoffman testified that Beaners also initiated changes to Club 212's speaker system and the manner in which guests were admitted and discharged from Club 212 as part of an overall effort to control noise in and around the establishment.

40. The PLCB also introduced evidence that from October, 2011 until October 2012, there were eighteen (18) instances at or nearby Beaners that resulted in a call or report to the Phoenixville Police Department. (R. 4.)

41. Two (2) of the incidents involved noise complaints. Three (3) incidents involved underage drinking. These occurred in November, 2011 (2 instances) and September, 2012. The remaining incidents involved individual fights or public drunkenness. (*Id.*).

42. Hoffman testified that in response to such episodes, during the relevant time period, he increased the frequency with which security personnel patrolled the rear of Club 212, closed off the rear of the building to patrons to prevent persons congregating at closing time and to help patrons move along more quickly to their final destination, and required additional Beaners personnel at private parties. He testified that he communicates frequently with Phoenixville police officers on patrol in the area and during community meetings to ensure that his establishment is doing those things necessary to comply with applicable regulations.

43. The PLCB did not offer into evidence any police incidents related to activity at or near Beaners after November 1, 2012.

## DISCUSSION

## I. LEGAL STANDARD

The Pennsylvania Liquor Code, 47 P.S. § 4-464, governs hearings upon refusal of licenses, renewals, or transfers. Section 464 provides that following an administrative hearing, any applicant who is aggrieved by the refusal of the Board to issue any such license or to renew or transfer any such license may appeal to the court of common pleas of the county in which the premises, or permit applied for, is located. The section continues:

> The court shall *hear the application de novo* on questions of fact, administrative discretion and such other matters as are involved . . . The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.

47 P.S. § 464 (emphasis added).

In appeals arising under Section 464 of the Liquor Code, the trial court may make its own findings and reach its own conclusions based upon those findings, even when the evidence it hears is substantially the same as the evidence presented to the Board. *Pennsylvania Liquor Control Bd. v. Richard E. Craft Amer. Legion Home Corp.*, 553 Pa. 99, 718 A.2d 276 (1998). De novo review contemplates an independent evaluation of the evidence that has already been presented. In essence, *"de novo* review" means that the reviewing court will examine the evidence in the record and has the authority, in the exercise of its statutory discretion, to make independent findings of fact and conclusions of law. *Pennsylvania State Police, Bureau*

*of Liquor Control Enforcement v. Cantina Gloria's Lounge,* 536 Pa. 254, 265-66, 639 A.2d 14, 20 (1994). The reviewing court has the authority to sustain, alter, change, modify or amend a decision of the Board, even if that court does not make findings of fact that are materially different from those found by the Board. *Id.; Adair v. Pennsylvania Liquor Control Bd.,* 519 Pa. 103, 546 A.2d 19 (1988). The trial court is not restricted to a review of the established record and may hear new evidence. *See Craft Amer. Legion,* 553 Pa. at 102, 718 A.2d at 277 (1998)(noting the "trial court conducted a de novo hearing at which the new president of the appellant's board testified"); *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Kelly's Bar, Inc.,* 536 Pa. 310, 314, 639 A.2d 440, 442 (1994)(stating court must make its own findings of fact and conclusions based upon the "record submitted by the Board and the additional evidence it received during the de novo hearing"); *Cantina Gloria's Lounge,* 536 Pa. at 258, 639 A.2d at 16 (acknowledging additional testimony was heard by the trial court). To proceed otherwise would be to ignore the statutory language in Section 464, which expressly provides that "the court shall hear the application *de novo* on questions of fact, administrative discretion and such other matters as are involved." 47 P.S. §4-464.

## II. DISCUSSION

A. Beaners' Prior Adjudicated Citations Do Not Preclude Renewal of Its License.

Under the Liquor Code, renewal of a liquor license is not automatic. 47 P.S. §4-470. Section 470(a)(1) of the Liquor Code provides that the Board "may" refuse to renew a liquor license for several reasons, including the fact that a licensee has one or more adjudicated citations. The use of the term "may," however, gives the Board discretionary authority to decide whether to grant or deny a properly filed renewal application. *U.S.A. Deli, Inc. v. Pa. Liquor Control Bd.,* 909

A.2d 24, 28 (Pa. Cmwlth. 2006), *appeal denied*, 593 Pa. 736, 929 A.2d 647 (2007). The Board has the discretion to renew a license even where the licensee has several adjudicated violations. A court may find that steps taken by a licensee to ensure that it would operate in accordance with the liquor laws justifies renewal of its license. *Goodfellas, Inc. v. PLCB*, 921 A.2d 559, 565 (Pa. Cmwlth. 2007), *appeal denied*, 594 Pa. 700, 934 A.2d 1279 (2007).

Upon consideration of the evidence offered at the hearing, the court does not agree with the Board that Beaners has a significant citation history such that a refusal to renew its application for license renewal is warranted. Beaners' current owner testified that in response to the citations it received regarding noise from loudspeakers, Beaners began implementing changes to ensure that it would operate in accordance with the liquor laws. Hoffman testified that Beaners (1) secured the windows to Club 212 so that patrons could not open the windows, (2) closed the back door during operating hours to dampen the sound emanating from the club and (3) required patrons to leave the premises though the front door to avoid crowds congregating in the back of the establishment near the residential apartments. Beaners also made a number of changes to the speaker system in the Club that were implemented to assist with noise reduction. Neighbors Koch and Baker testified that between the date of their last noise complaints in late 2011 and early 2012 until the administrative hearing in June, 2013, they had seen improvements with the noise and an improved working relationship with Beaners. Koch and Baker testified that they believed there was now an open line of communication with Hoffman and that the earlier problems with noise had been and still were being addressed by Beaners. Beaners at Baker's request, changed the manner and direction in which patrons stood in line while waiting to enter Club 212 and the change worked well. (R. 4 at 124.)

These steps made a difference in the operation of Licensee

as there was only one (1) reported incident during Hoffman's tenure in 2011, that being the weekend of September 3 and 4th, 2011. There was not another problem with noise until nearly six months later in April, 2012, when Beaners received citations for noise on consecutive weekends — April 15 and 21st, 2012. The last noise citation came one month later during the weekend of May 18 and 19th. This is in stark contrast to the citations issued in 2009 and 2010, which occurred nearly monthly from September 2009 until January 2010. Although not perfect, the steps taken by Beaners to quell the noise from its establishment were helpful in reducing the noise complaints and were directed to ensuring that it operated its business in accordance with the liquor laws. The court finds that Beaners' efforts taken to avoid future violations were appropriate and support renewal of its liquor license.

B. Alleged Disturbances At or Surrounding Beaners in 2012 Do Not Require Non-Renewal of Its License.

Section 4-471 of the Liquor Code permits, in addition to specific instances listed, revocation or suspension of a liquor license "upon other sufficient cause shown." 47 P.S. §4-471. Violations of a law other than the Liquor Code may constitute sufficient cause for revocation or suspension of a liquor license. *PLCB v. Althouse*, 503 A.2d 90, 91 (Pa. Cmwlth. 1986). A licensee may be held accountable for non-Liquor Code violations if it can be established that there was a pattern of illegal activity on the licensed premises about which the licensee knew or should have known and the licensee failed to take substantial steps to prevent such activity. *Philly Int'l Bar, Inc. v. Pa. Liquor Control Bd.*, 973 A.2d 1, 3 (Pa. Cmwlth. 2008), *appeal denied*, 602 Pa. 668, 980 A.2d 609 (2009).

The evidence presented at the hearing does not suggest that there was a relationship between the activity in- and outside of Beaners and the manner in which it operated its business. Although the PLCB introduced evidence relating to eighteen

(18) "instances" of police activity at or surrounding the premises, the court does not find that these examples establish a pattern of illegal activity occurring at this establishment that needed to be remediated.

As an initial matter, it did not go unnoticed by the court that each of the civic leaders that testified, while not condoning any violation of this Commonwealth's liquor laws, did not view this establishment as a public nuisance or source of criminal activity. Borough Manager E. Jean Krack testified that as someone charged with protecting and looking out for the interests of Phoenixville and its residents, including the neighbors in and around Beaners, he did not take issue with the manner in which the premises was operated. More significant, Chief of Police William Mossman testified that Hoffman operated Beaners like a "tight ship" and he too did not consider the establishment to be a nuisance or problem for the Phoenixville area or his officers.

Having considered each of the incidents, the court does not find that they signal an abuse of the licensing privilege. The incidents do not involve the same complainants or incidents of illegal activity. Furthermore, not all of the incidents resulted in any affirmative action having to be taken by police. Finally, not all of the incidents were shown to be connected to this licensee or the manner in which its business is conducted. The evidence regarding these incidents indicated the following.

Three (3) incidents of underage drinking were attributed by the PLCB to Beaners. Two (2) incidents occurred in November, 2011 within a week of each other. In both cases, it was Beaners personnel who identified the individuals and removed them from the establishment. The individual involved in the first incident was not served alcohol at Beaners, but had consumed alcohol elsewhere prior to admittance to Beaners. (R. 4 at 8.) The third incident did not occur until almost a year later. It involved a private sweet sixteen birthday party that was held

in the Club 212 facilities. In that case, again it was Beaners that identified the problem after observing party guests acting in a manner that suggested that alcohol had been consumed. They proactively notified the police department, who arrived at the scene and processed the juveniles.

The PLCB also introduced into evidence four (4) instances involving complaints of noise at or near the licensed premises. On March 25, 2012, Edward Koch, a resident of the apartments located behind Club 212 and near the municipality's public lot, complained to the PLCB and the police department about noise coming from people yelling in the back of Club 212. Two (2) female patrons had become involved in an altercation at Club 212 and were being escorted out of the back of Club 212. In April 8, 2012, Mr. Koch again called police — this time about loud music emanating from Club 212. At the request of the responding officer and in response to the complaint, Beaners closed the windows and the officer has not seen them open since. (R. 4 at 15.) Mr. Koch called police on April 29, 2012 and again in September, 2012. The first call related noise in the rear of Club 212 and the second call was to report the sound of glass breaking. Police responded to both calls, but did not identify any problems and did not issue any citations or take any further action.

The remaining instances of police activity involved altercations or incidents of disorderly conduct. In three (3) of the cases, patrons complained to police about events that allegedly occurred inside of the licensed premises but did so only after they had left Beaners. In one (1) of the cases, the complainant never told anyone at Beaners about the events in question. Two (2) of the instances were initiated by Beaners with a call to the police department to report an unruly patron and a request for officer assistance made to police officers on regular patrol in the area. In these cases, the security personnel at Beaners were present and proactive. Chief Mossman testified that involving police in such matters is exactly the

kind of response he wants to see from licensed establishments. To now hold such actions against the licensee would thwart the efforts of police to control this highly populated entertainment area of Phoenixville's downtown.

Six (6) other instances of police activity at or near Beaners involved altercations. The evidence offered with regard to several of these instances failed to establish that the occurrences involved patrons of Beaners or stemmed from its operation. The area where Beaners is located is home to several other licensed establishments. Because officers need an address to put in a report, if an incident involves anyone at or near the large real estate owned by Beaners, that address is given. (R. 4 at 196.) It does not necessarily follow, however, that the resulting altercation and/or problem began at Beaners or resulted from the manner in which it operates its business. Moreover, located just behind Beaners is a municipal lot where patrons headed to/from any of the numerous downtown establishments or the surrounding area can park. Police Chief Mossman testified that his department patrols that area during weekends because of the hundreds of people that leave the various downtown establishments at the same time on those nights. He did not testify that any of his officers are required or needed at that location or at Beaners because of any regular problem with Beaners' patrons or that establishment. The evidence does not demonstrate a pattern of ongoing criminal activities at this location and thus the first prong for a nonrenewal based upon "other activities" at or around the licensed premises has not been met.

Even if one concluded differently, following these incidents Beaners instituted reasonable and timely measures aimed at preventing the reoccurrence of such events in the future. In consultation with the police department, Beaners restricted patrons from using its back exit at closing time and directed patrons out the front door onto Bridge Street. Beaners also made a change to the manner in which patrons lined up

for entrance to Club 212. Hoffman testified that Beaners has done away with "teen night." Additionally, Beaners has increased the regularity with which its security patrols the back of its establishment to avoid any problems and reduce the noise stemming from patrons congregating in that area. Although the administrative hearing occurred in June, 2013, the last reported incident introduced at that hearing took place in November, 2012. The record demonstrates that Beaners was, and is, committed to improving its establishment. The court further concludes that the corrective measures taken by Beaners in response to the problems that occurred in late 2011-2012 have been timely and appropriate.

C. Beaners' Late Application for Renewal Does Not Require Denial of the Application

Finally, included within the PLCB's objections to the application was an objection based upon the application's untimeliness. Beaners' application for renewal of its license should have been filed before the end of January, 2013 for the renewal period beginning on April 1, 2013. It was filed on or about February 6, 2013. Upon filing its application, Beaners included the required late fee and stated its reason for the delay.

Section 4-470 of the Liquor Code permits an application to be accepted by the PLCB out of time. The Court, as discussed above, disagrees with the PLCB that Beaners' conduct evidences a disregard for the privilege of holding a license. Taking those issues out of the equation, the court finds that the late filing by less than a month of Beaners' application does not justify non-renewal.

CONCLUSIONS OF LAW

1. Section 470(a)(1) of the Liquor Code provides that the Board "may" refuse to renew a liquor license for several reasons, including the fact that a licensee has one or more

adjudicated citations.

2. The use of the term "may," however, gives the Board, and therefore the court, discretionary authority to decide whether to grant or deny a properly filed renewal application.

3. A court may find that steps taken by a licensee to ensure that it will operate in accordance with the liquor laws justify renewal of its license.

4. Beaners' citation history did not require rejection of its license renewal or demonstrate an abuse of the licensing privilege. Furthermore, Beaners enacted changes to ensure that it would operate in accordance with the liquor laws.

5. Beaners' history, and the reported incidents introduced into evidence by the PLCB, do not establish a pattern of illegal activity on the licensed premises.

6. Even though some incidents of illegal activity occurred at or near Beaners in 2012, the instances did not evidence "ongoing criminal activity" about which Beaners knew or should have known and Beaners undertook substantial and timely remedial measures to prevent such activity from occurring in the future.

For all of the foregoing reasons, Beaners' request for renewal of its restaurant liquor license and amusement license for the period beginning April 1, 2013 is granted.

An appropriate Order follows.

## ORDER

And now, this 6th day of May, 2014, following a hearing on April 17, 2014 on the appeal of Beaners Restaurant, Inc. to the Order of the Pennsylvania Liquor Control Board dated November 20, 2013, the appeal is granted and it is hereby ordered that the Pennsylvania Liquor Control Board renew Restaurant Liquor License No. R-297, and its attendant

amusement permit, for the premises located at 208-212 Bridge Street, Phoenixville, Pennsylvania for the period beginning April 1, 2013 and ending March 31, 2015, upon payment of any applicable fees and fulfillment of any other licensing requirements.