639 A.2d 14

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellee,**

v.

**CANTINA GLORIA'S LOUNGE, INC., 15286 Rt. 30, North Huntington, Pennsylvania, 15642–1033, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1993.

Decided March 24, 1994.

Reargument Denied May 27, 1994.

Dante G. Bertani, Greensburg, for appellant.

Joseph Rengert, Chief Counsel, Eileen S. Maunus, Deputy Chief Counsel, Richard Parker and Stanley J. Wolowski, Asst. Counsel, Pennsylvania State Police, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

### OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of Cantina Gloria's Lounge, Inc. (Appellant) from the unreported Memorandum Opinion and Order of the Commonwealth Court affirming the order of the Court of Common Pleas of Westmoreland County, 596 A.2d 312, which in turn affirmed the order of the Pennsylvania Liquor Control Board (Board) affirming an order of one of its administrative law judges imposing a suspension totalling thirty days and fines in the amount of $4,250.00 for three violations of the Liquor Code, Act of April 12, 1951, P.L.90, as re-enacted by Act of June 29, 1987, P.L.32, effective on July 1, 1987, 47 P.S. § 4-470.

The fines and suspension arose out of an incident which occurred in the early morning hours of August 8, 1987 at Appellant's premises, a licensed establishment. Based upon the eyewitness observations of Dennis Ondek, an enforcement officer of the Pennsylvania State Police, Liquor Code Enforcement, three citations were issued to Appellant alleging: that Appellant permitted lewd, immoral or improper entertainment upon the licensed premises in the form of a male stripper in violation of Section 493(10) of the Liquor Code, 47 P.S. § 4-493(10); that Appellant was permitting this entertainer to come into contact with or associate with patrons in violation of Section 5.32(d) of the regulations of the Board, 40 Pa.Code § 5.32(d); and, that Appellant was selling alcohol after hours in violation of Sections 406(a)(2) and 493(16) of the Liquor Code, 47 P.S. § 4-406(a)(2) and § 4-493(16).

A hearing on the citations was held before an administrative law judge on September 20, 1988, where Officer Ondek testi-

fied that he observed a male dancer remove all his clothing except for a jock strap and dance for six female patrons. The dancer straddled some of the patrons so as to rub his genital area against the face or breasts of the patrons and allowed at least one of the patrons to kiss his genital area. The officer also testified that he purchased three beers after 2:00 a.m. at prices which were a quarter higher than those charged before the mandated closing time. He also observed other patrons being served after 2:00 a.m. and he saw additional patrons enter the premises after closing time by knocking on the door and being admitted. Officer Ondek also testified that Gloria Brugnoli, the president, stockholder and manager of the licensed establishment was present and observed the dancing performance.

This evidence was sufficient for the administrative law judge to conclude that violations of the Liquor Code and Regulations had been established. Accordingly, the administrative law judge imposed a fifteen day suspension and $2,000.00 fine for the lewd dancing violation, a fifteen day suspension and $1,000.00 fine for the associating with patrons violation, and a $1,250.00 fine for the selling of alcoholic beverages after hours violation. These suspensions were imposed consecutively. An appeal followed to the Board and that body affirmed.

Appellant then filed an appeal in the Court of Common Pleas. The Board filed a motion *in limine* seeking to narrow the scope of review to be exercised by that court to what it believed was mandated by the recent amendments to Section 471 of the Liquor Code, amended by Act of June 29, 1987, P.L. 32, 47 P.S. § 4–471 and which had gone into effect on July 1, 1987. This motion was denied and a *de novo* hearing was held before the Honorable Daniel J. Ackerman, Judge of the Court of Common Pleas of Westmoreland County.

At this hearing, the Board entered the transcript of the proceedings before the administrative law judge as its case and rested. Appellee presented the testimony of five witnesses, including that of Ms. Brugnoli, who testified as she had before the administrative law judge that the dancer performed without her knowledge or consent and that when she observed

the performance she put a stop to it. The trial court also heard from four other witnesses, whose testimony was found to be corroborative and offered no new facts. The trial court was of the opinion that because it could find no new facts or an abuse of discretion in the actions of the administrative law judge, that it was required to affirm his order and an order to that effect was entered.

Appellant next appealed this determination to the Commonwealth Court which also affirmed, but in so doing ruled as a matter of law that the effect of the recent amendments to Section 471 of the Liquor Code no longer permitted *de novo* review by trial courts in cases involving suspensions and revocations and that the court's review was now limited to determining whether the administrative law judge's findings of fact are supported by substantial evidence, whether an error of law was committed or whether the administrative law judge had abused his or her discretion. Authority for this proposition was found in its own case of *In re: Appeal of Iggy, Inc.,* 140 Pa. Commonwealth Ct. 168, 592 A.2d 122 (1991), which it held was dispositive of the question of the scope of review in enforcement actions.

Because this was our first opportunity to review the amendments to the Liquor Code and to consider their effect on the scope of review exercised by the courts of common pleas in appeals to them under Section 471 of the Liquor Code,[1] we accepted review and now reverse.

We begin our discussion of this matter by noting that prior to the 1987 amendments to the Liquor Code, Section 471 provided in pertinent part that:

> In the event the person who was fined or whose license was suspended or revoked by the board shall feel aggrieved by the action of the board, he shall have the right to appeal to

---

1. It does not appear that the parties in the *Iggy* appeal sought further review to this Court from the opinion and order of the Commonwealth Court and, as far as our research indicates, this is the first time that we have been presented with a petition for allowance of appeal raising this precise issue for review under the sections of the amended Liquor Code.

the court of quarter sessions or the county court of Allegheny County in the manner as herein provided for appeals from refusals to grant licenses. Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court.

Act of 1951, April 12, P.L. 90, Art. IV § 471, as amended 1971, June 3, P.L.143, No. 6, § 1 (§ 509(a)(147)) 47 P.S. § 4-471.

We have held that an appeal from a decision of the Board pursuant to this language required the court of common pleas to conduct a *de novo* review, and in the exercise of its statutory discretion, to make findings and conclusions. We also held that this language permitted a court of common pleas, based upon its *de novo* review, to sustain, alter, change or modify a penalty imposed by the Board whether or not it makes findings which are materially different from those found by the Board. *Adair v. Liquor Control Board*, 519 Pa. 103, 546 A.2d 19 (1988).

On June 29, 1987, the entire Liquor Code was re-enacted with substantial amendments and which became effective on July 1, 1987. The new amended version of the above-quoted portion of Section 471 discussed in *Adair* now provides in pertinent part:

In the event the bureau or the person who was fined or whose license was suspended or revoked shall feel aggrieved by the decision of the board, there shall be a right to appeal to the court of common pleas in the same manner as herein provided for appeals from refusals to grant licenses.

When the Commonwealth Court reviewed these changes to Section 471 in *Appeal of Iggy, Inc.*, 140 Commonwealth Ct. 168, 592 A.2d 122 (1991), that court read former Section 471 to contain specific instructions concerning how a court of common pleas was to review decisions of the board. The Court reached that conclusion because specific language was included in the statute that the court, in the exercise of its discretion, could sustain, reject, alter or modify the findings, conclu-

sions and penalties of the board based on the findings and conclusions it made after hearing the case *de novo*. The Court went on to note, however, that inasmuch as the amended Section 471 repealed the specific directions concerning how a court was to review appealed decisions and did not replace these directions with new ones, the Liquor Code was now silent on this question.

While both versions of the statute provide in identical language that aggrieved parties have a right to appeal in the same manner as provided for in appeals from refusals to grant licenses (Section 464), the Commonwealth Court was not convinced that the directions on the scope of review in Section 464 could be invoked to fill the void created by the amendments to Section 471. This view, critical to the entire analysis, is based on the erroneous conclusion that the manner of review and the scope of review were included as separate and distinct considerations in former Section 471 but that the amended Section 471 speaks in terms only of manner of review and that no provision for scope of review is made.

"... we note that the former § 471 contained both instructions as to manner and scope of review. The amended § 464, to which the amended § 471 refers, also contains instructions as to manner and scope of review. We believe that the legislature considered the manner of review and the scope of review to be separate and distinct. While the legislature recognized that the manner of proceedings under the amended § 471 should follow the pattern set forth in § 464, it does not follow that the legislature intended the scope of review under the two sections to be the same. *Appeal of Iggy, Inc.*, 140 Pa.Commonwealth at 174, 592 A.2d at 125.

We disagree.

As we read the critical amended provision of Section 471: "there shall be a right to appeal to the court of common pleas in the same manner as herein provided for appeals from refusals to grant licenses," we observe that the legislature has made provisions for both the manner of review and the scope of review. The manner of review prescribed is by "appeal"

and the scope of review is the same as that in license refusal cases. Prior to the 1987 amendments, § 471 provided for "the right to appeal to the court of quarter sessions or the county court of Allegheny County in the manner as herein provided for appeals from refusals to grant licenses." This language, as in the amended statute, provided that the manner of review was to be by "appeal" and that the scope of review would be the same as in appeals from refusals to grant licenses. Of course, the old statute also included specific instructions on how the trial court was to conduct its review in such appeals which the Commonwealth Court concluded was the "scope of review." We read this language, however, merely as an explanation of the scope of review referred to in the previous sentence.

It may be that the Commonwealth Court reached its conclusions concerning the significance of this language based on the fact that the amended § 471 no longer contains this detailed explanation of how the trial court is to conduct its review and that, searching for a reason for this deletion, it drew the conclusion that for the legislature to have removed this language it must have been displeased with this type of review or with the interpretation we ascribed to this language in our *Adair* decision. It can easily be said that the deleted language was surplusage and therefore deleted to simplify the section.

It cannot be argued, however, that the deletion of the specific instructions on the scope of review was in response to our decision in *Adair*. The Liquor Code amendments went into effect on July 1, 1987, and our decision in *Adair* was not reached until July 28, 1988, after the amendments became effective.

Additionally, we have not been directed to anything in the legislative history surrounding the amendments to the Liquor Code, or of this section in particular, which would lead one to conclude that the deletion of the specific instructions on the scope of review in § 471 appeals was a deliberate attempt on the part of the Legislature to take away *de novo* review in such cases.

Nowhere has it been argued that the courts of common pleas are incapable of conducting *de novo* reviews in such cases, that their history of disposing of such appeals under this standard has been unacceptable to the legislature or that the trial court's function of independently hearing such cases introduces arbitrariness or unfairness into the review process. If anything, *de novo* review by the judicial branch assures litigants that license suspensions based on violations of the Liquor Code will only be enforced when neutral judicial officers, detached from the bureau charged with the task of monitoring and enforcing the liquor laws of this Commonwealth are satisfied that violations have, in fact, been established. Given the lack of evidence to support a view that the deletion of the detailed instructions on the scope of review in § 471 appeals was a legislative response to dissatisfaction with *de novo* review in such cases, we are unwilling to read amended § 471 as the Commonwealth Court has, thereby creating a hole in the statutory scheme when it comes to trial court review in such cases.[2]

**2.** The Commonwealth Court filled this hole by looking outside the statute for an appropriate scope of review. Specifically, the Court referred to 42 Pa.C.S. § 5105(a)(2) which generally provides for a right of appellate review from the final order of every government unit which is an administrative agency. 42 Pa.C.S. § 5105(d) discusses the scope of review for appeals covered under that section and provides:

(1) Except as otherwise provided in this subsection an appeal under this section shall extend to the whole record, with like effect as upon an appeal from a judgment entered upon the verdict of a jury in an action at law and the scope of review of the order shall not be limited as on broad or narrow certiorari.

(2) An order which is appealable under [this section] but which would not be appealable under Chapter 7 of Title 2 [2 Pa.C.S. § 701–704], ... shall not be reversed or modified on appeal unless the appellant would be entitled to equivalent relief upon an action in the nature of equity, replevin, mandamus or quo warranto or for declaratory judgment or for a writ of certiorari or prohibition or otherwise objection to such order.

Since a license suspension appeal is not appealable under the Administrative Agency Law (Chapter 7 of Title 2, 2 Pa.C.S. §§ 701–704 referred to in Section 5105(d)(2), the Commonwealth Court concluded that Section 5105(d)(2) would be applicable and would provide the proper scope of review. Furthermore, the court concluded that the type of review most appropriate, given the substantial changes in new Section 471, would be the type utilized when appealing a final decree in equity, *i.e.*, limited to determining whether the chancellor's findings are

We also have reservations concerning the soundness of the Commonwealth Court's reading of this section which reduces the reference to § 464 in amended § 471 to merely a cosmetic allusion to the fact that § 464 also permits appeals to be taken to the court of common pleas. Such a reading of the statute renders that portion of the section a superfluous insertion into an otherwise complete, compact and highly technical section which attempts to regulate the process to be utilized in revocation and license suspension cases in comprehensive fashion.

Our comparison of the repealed § 471 to the amended one indicates extensive revisions, a few of which can be noted. The new § 471 makes provisions for an enforcement bureau which issues citations of violations. These violations are now tried before an administrative law judge who is authorized to issue fines and suspensions with increased penalties. The adjudication of the administrative law judge is reviewable by the board, which must affirm the administrative law judge (on the record before the administrative law judge) unless the decision is not based on substantial evidence.[3] Finally, in the appeal provisions, a new section has been added which allows additional hearings to be held to determine whether the appeal should operate as a supersedeas.

Viewing these amendments along with the re-enacted portions of § 471 as a whole, we see a complete and comprehensive scheme emerge where each word must be given meaning and we are hardpressed to read any of the language superflu-

supported by substantial evidence, whether there was an error of law committed, or whether the chancellor abused his discretion. *Iggy*, at 176, 592 A.2d at 126.

Under the approach taken by the Commonwealth Court, we are left to our own devices to speculate why the Legislature would have omitted from its re-enactment of the Liquor Code such an important question as the scope of review in such cases when it went to great pains to amend the entire Code, including § 471, and to enact a statute which regulates all aspects of the Liquor industry in this Commonwealth.

3. We note that the *Board's* scope of review has been narrowed by the amendments, perhaps in response to complaints that the *Board*, under the former Liquor Code, was charged with prosecutorial enforcement and adjudicative functions which at times overlapped and could have been seen as permitting subtle arbitrariness to creep into its decisions.

ously. Consistent with the general rule of statutory construction that "every statute shall be construed, if possible, to give effect to all its provisions" (1 Pa.C.S. § 1921(a)) we understand the section's reference to § 464 as a direction that our courts look to that section to determine what scope of review it will conduct in § 471 appeals, instead of it being repeated and added to an already long section.

It is very interesting to note that earlier in § 471 the procedure to be utilized at citation hearings is also not specifically set forth in the section. Rather, the Legislature chose to rely on the following direction:

(b) Hearing on such citations shall be held *in the same manner as provided herein* for hearings on applications for license. (Emphasis added). 47 P.S. § 4–471(b).

Such hearings are regulated at § 464 and require that the "hearing shall be before a hearing examiner designated by the board. At such hearing, the board shall present its reasons for its refusal or withholding of license, renewal or transfer thereof. The applicant may appear in person or by counsel, may cross-examine the witnesses for the board, and may present evidence which shall likewise be subject to cross-examination by the board. Such hearing shall be stenographically recorded." 47 P.S. § 4–464. It seems rather obvious to us that this language in § 471 refers to the same thing as is referred to in § 464, and requires us to read both sections as one statute, since the statutes are in *pari materia.*[4] Citation hearings, then, are to be conducted in the same way that hearings are conducted in license application hearings, with the same rights and guarantees and rather than repeating the directions, the Legislature chose to rely on our ability to refer to § 464 for guidance in this circumstance. It follows from

4. 1 Pa.C.S. § 1932. Statutes in Pari Materia.

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

Act of December 6, 1972, P.L. 1339, No. 290, § 3, immediately effective.

this that the reference that "there shall be a right to appeal to the court of common pleas *in the same manner as herein provided* for appeals from refusals to grant licenses," similarly represents the Legislature's direction that the scope of review in § 471 appeals will be the same as that provided for in § 464 appeals and that rather than repeating those directions, it could simply refer to the earlier section and trust in our ability to refer to that section for the appropriate scope of review.

Section 464 appeals are *de novo* on questions of law and fact, administrative discretion and such other matters as are involved and allow the court of common pleas to sustain or over-rule the board, without regard to whether the same or different findings of fact or conclusions of law are made.[5]  In effect, this is consistent with the prior § 471 scope of review language we reviewed in *Adair* and since we have not found any evidence to support the view that the Legislature was dissatisfied with *de novo* review in such situations when it amended the Liquor Code,[6] we conclude that the court of common pleas is still required to conduct a *de novo* review and, in the exercise of its statutory discretion, to make its own findings and conclusions.  Based upon its *de novo* review, it may sustain, alter, change, modify or amend the board's action whether or not it makes findings which are materially different from those found by the board, as presently done in § 464 appeals.

5.  Re-enacted Section 464 provides, in pertinent part, as follows:

The court shall hear the application *de novo* on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the board. The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license to the applicant.

6.  This conclusion would also appear to be at odds with the *Iggy* court conclusion that § 464 scope of review allows a court to modify the board's decision only when there as been a manifest abuse of discretion, or the trial court makes findings of fact which vary from the findings made by the Board.  The statutory language does not condition the court's statutory authority upon such a predicate and, as in *Adair*, we conclude that such a limitation on the authority of the lower court is based upon a misreading of the section.  In short, *Iggy* is of no precedential value.

■ In this case, the trial court understood its scope of review as *de novo* and cited our *Adair* decision as dispositive on this question. The trial court properly exercised its discretion in accepting as its own the findings and conclusions of the administrative law judge. Thereafter, the trial court failed to exercise its discretion in determining whether the penalty imposed by the administrative law judge was proper under the facts of the case because the trial judge believed that the penalty could not be altered once the findings and conclusions of the administrative law judge were adopted. The trial judge apparently believed that the penalty could not be altered unless findings of fact were made different from those of the administrative law judge. This was error.

What we said in *Adair* still holds true, and bears repeating: "To be sure, the authority to alter, change, modify or amend a Board imposed penalty may be exercised by the trial court whether or not it makes findings which are materially different from those found by the Board." *Adair*, 519 Pa. at 115, 546 A.2d at 25. This matter must be remanded to the Court of Common Pleas so that it can exercise its own statutory discretion and determine for itself whether it is appropriate to sustain, alter, change or modify the *penalty* imposed based on the facts it has already found at the *de novo* hearing held in this matter.

The order of the Commonwealth Court is reversed and this matter is remanded to the Court of Common Pleas of Westmoreland County for proceedings consistent with this opinion.

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.