# In re Appeal of Hotel Liquor License

356

C.P. of Monroe County, No. 2097 CIVIL 2014

*Robert H. Nothstein*, for appellant.
*Peter J. Yoon*, for Liquor Control Board.

ZULICK, *J.*, Dec. 6, 2014—1. Tabs Entertainment, Inc., TIA Tabs Tavern and Inn (TABS) filed an appeal on March 21, 2014 from the decision of the Pennsylvania Liquor Control Board (PLCB) on March 19, 2014 to deny renewal of TABS' hotel liquor license.

2. TABS owns Pennsylvania Liquor Control Board (PLCB) Hotel Liquor License No. H-2892 (LID 59040) for premises it leases at 370 Route 196, Tobyhanna Pennsylvania, for the period beginning October 1, 2013 and ending September 30, 2015. Exhibit R-1.

3. Robert Mathews (Mr. Mathews) is the sole shareholder and president of TABS. He bought one

hundred percent (100%) of the shares on June 6, 2012 from Jahan Tabatabaie (Mr. Tabatabaie) after the bar had been closed for one and a half years. Board Hearing, Dec. 27, 2013, N.T., 26.

4. Until June 9, 2014, appellant's brief, Mr. Mathews operated the bar and restaurant under the name "The Doo Wop Lounge." He has closed down the bar due to personal, ongoing health issues. *CCP Hearing*, N.T., 8-11. On June 23, 2014, Mr. Mathews sent the license to the PLCB, requesting that it be put into safekeeping; he later received the certified mail receipt. Exhibit A of appellant's brief.

5. On April 20, 2011, the PLCB approved a Conditional Licensing Agreement (CLA) that was entered into between TABS and the board's office of chief counsel, the result of PLCB's objection for the renewal period effective October 1, 2009. Exhibit R-4. The CLA imposed the following restrictions on licensee in an effort to address the concerns raised by licensing and the board:

a. [Licensee] shall maintain and enforce a written barred patrons list on the licensed premises. Such list shall be maintained by [licensee] as a business record, pursuant to section 493(12) of the liquor code and shall be made available upon request to law enforcement officials, as well as Board and Pennsylvania State Police, Bureau of Liquor Control Enforcement ("Bureau") employees;

b. [Licensee] shall employ at least one (1) security guard who will be present and working at the licensed premises on all Friday and Saturday nights, from 9:00 PM until closing and who will be clothed in such a way as to make his/her status as security personnel readily apparent;

c. [Licensee] shall, within ninety (90) days of approval of this agreement, become compliant with and remain compliant with the responsible alcohol management provisions of the liquor code including, but not limited to:

i. New employee orientation;

ii. Training for alcohol service personnel;

iii. Manager/owner training;

iv. Displaying of responsible alcohol service signage; and

v. A certification compliance inspection by a representative of the board's bureau of alcohol education;

For purposes of this section, days in which the license is in safekeeping shall not be counted against the ninety (90) day deadline; and

d. [Licensee] shall maintain a separate checking account with a banking institution insured by the federal deposit insurance corporation, which will be used solely for the purpose of paying its vendors. [licensee] will ensure sufficient funds to pay all vendors with a required minimum balance to satisfy account requirements. [Licensee] will electronically transfer funds to this separate checking account maintained for its vendors to ensure that adequate funds are available at all times to meet the payment requirement.

*Id.*

6. On September 19, 2013, licensee filed an untimely application for the renewal of Hotel Liquor License No. H-2892 (LID 59040). *Id.*

7. By letter dated September 20, 2013, PLCB notified licensee that it objected to the renewal of its license for the license period effective October 1, 2013, based on the following objections:

a. It is alleged that you have abused your licensing privilege, and pursuant to Section 470 of the liquor code (47 P.S. Section 4-470), you may no longer be eligible to hold a license based upon: violations of the liquor code relative to citation numbers 2010-0179, 2009-2613, 2009-2335, 2009-2301, 2009-0617, 2009-0468, and 2008-2540.

b. You have breached the conditional licensing agreement approved by the board on April 20, 2011, signed by Jahan Tabatabaie, president, Tabs Entertainment, Inc. and Faith S. Diehl, chief counsel, Pennsylvania Liquor Control Board. Specifically, you have not become compliant with the Responsible Alcohol Management Program (RAMP).

c. The bureau of licensing has rejected the late-filed renewal application pursuant to Section 470(a) of the liquor code (47 P.S. Section 470(a)).

d. You have failed to file the required tax clearance from the department of revenue indicating that all state tax reports have been filed and all state taxes have been paid, timely appealed or approved for deferred payment as required by Section 477 of the liquor code. 47 P.S. § 4-477.

e. You have failed to submit the additional $100.00 late filing fee pursuant to letter date September 20, 2013.

f. You have failed to submit the application addendum in proper order pursuant to letter dated September 20, 2013.

g. You have failed to submit a copy of the current valid health license pursuant to letter dated September 20, 2013.

8. The citations in the September 20, 2013 letter are as follows:

a. Citation No. 10-0179 was issued against licensee on February 1, 2010, concerning licensee's violation of section 493(26) of the liquor code (47 P.S. § 4-493(26)), in that on October 30, November 3, 4, 6, 10, and 11, 2009, licensee, by its servants, agents or employees, issued checks or drafts in payment for purchases of malt or brewed beverages, when it had insufficient funds in, or credit with, the institution upon which drawn for the payment of such checks, licensee admitted the charge and was fined four hundred dollars ($400.00).

b. Citation No. 09-2613 was issued against licensee on November 13, 2009, concerning licensee's violation of section 493(26) of the liquor code (47 P.S. § 4-493(26)), in that on August 10, 2009, licensee, by its servants, agents or employees, issued checks or drafts in payment for purchases of malt or brewed beverages, when it had insufficient funds in, or credit with, the institution upon which drawn for the payment of such checks. Licensee admitted the charge and was fined three hundred dollars ($300.00).

c. Citation No. 09-2335 was issued against licensee on October 7, 2009, concerning licensee's violation of section 491(10) of the liquor code (47 P./S. § 4-491(10)), in that on September 21, 2009, licensee, by its servants, agents or employees, fortified, adulterated, and/or contaminated liquor. Licensee admitted the charge and was fined two hundred fifty dollars ($250.00).

d. Citation No. 09-2301 was issued against licensee on October 2, 2009, concerning licensee's violation of section 493(26) of the liquor code (47 P.S. §4-493(26)), in that on August 7 and 10, 2009, licensee, by its servants, agents or employees, issued checks or drafts in payment for purchases of malt or brewed beverages, when it had insufficient funds in, or credit with, the institution upon which drawn for the payment of such checks. Licensee admitted the charge and was fined two hundred fifty dollars ($250.00).

e. Citation No. 09-0617 was issued against licensee on March 23, 2009, concerning licensee's violation of sections 401(a) and 407(a) of the liquor code (47 P.S. §§ 4-401(a) and 407(a)), in that on February 1, 2009, licensee, by its servants, agents or employees, sold malt or brewed beverages in excess of one hundred ninety-two (192) fluid ounces in an single sale to one (1) person for consumption off the licensed premises. Licensee admitted the charge and was fined two hundred fifty dollars ($250.00).

f. Citation No. 09-0468 was issued against licensee on March 9, 2009, concerning licensee's violation of section 493(26) of the liquor code (47 P.S. § 4-493(26)), in that on January 6, 2009, licensee, by its servants, agents or employees, issued checks or drafts in payment for purchases of malt or brewed beverages, when it had insufficient funds in, or credit with, the institution upon which drawn for the payment of such checks. Licensee admitted the charge and was fined one hundred fifty dollars ($150.00).

g. Citation No. 08-2540 was issued against licensee on October 27, 2008, concerning licensee's violation of sections 491(1), 492(2), and 493(16) of the liquor code (47 P.S. §§ 4-491(1), 4-492(2), and 4-493(16)),

in that on October 1, 2008, licensee, by its servants, agents or employees, sold alcoholic beverages after its hotel liquor license had expired on September 30, 2008, and it had not renewed and/or validated said license. Licensee admitted the charge and was fined one thousand two hundred fifty dollars ($ 1,250.00).

PLCB opinion, citing Exhibit R-5: B-5.

9. On September 27, 2013, licensing received TAB'S waiver/authorization and late filing statement, which specified that licensee's renewal application was filed late because it "was waiting for renewal of new lease." Exhibit R-4: B-7.

10. On September 27, 2013, licensing received a copy of Robert B. Mathews's RAMP owner/manager certification, which he received on January 8, 2013. *Id.*

11. By letter dated October 3, 2013, licensing notified licensee that it objected to the renewal of its license for the license period effective October 1, 2013, based on the following amended objections:

a. It is alleged that you have abused your licensing privilege, and pursuant to Section 470 of the liquor code (47 P.S. Section 4-470), you may no longer be eligible to hold a license based upon: violations of the liquor code relative to citation numbers 2010-0179, 2009-2613, 2009-2335, 2009-2301, 2009-0617, 2009-0468, and 2008-2540.[1]

b. You have breached the Conditional Licensing Agreement approved by the board on April 20, 2011, signed by Jahan Tabatabaie, president, Tabs Entertainment, Inc. and Faith S. Diehl, Chief Counsel,

---

1. The citations are identical to those listed in the September 20, 2013 letter and detailed in *supra* Paragraph 9.

Pennsylvania Liquor Control Board. Specifically, you have not become compliant with the Responsible Alcohol Management Program (RAMP); you failed to maintain and enforce a written barred patrons list on the licensed premises; you failed to employ at least ˙ one (1) security guard to be present and working at the premises on all Friday and Saturday nights from 9:00 PM until closing; and you failed to ensure sufficient funds to pay all vendors.

c. The bureau of licensing has rejected the late-filed renewal application pursuant to Section 470(a) of the liquor code (47 P.S. § 470(a)).

Exhibit A-10.

12. By letter dated October 28, 2013, PLCB notified licensee that a hearing would be held on November 18, 2013, in Scranton, Pennsylvania. By letter December 5, 2013, licensing notified Licensee that the hearing scheduled for November 18, 2013 was postponed and would be held on December 27, 2013 in Scranton, Pennsylvania. Exhibit R-4: B-11.

13. As of the December 27, 2013 hearing, the board's bureau of alcohol education's records showed that as of October 2, 2013, TABS had not been RAMP-certified. *Id.* at B-10 (Board attestation of official records).

14. Mr. Mathews testified that at the time of the December 27, 2013 hearing, he believed he had complied with RAMP certification because he had obtained certification as a manager. *CCP Hearing*, N.T., 39. He testified that he had difficulty in getting his bartenders certified because the "bartenders were coming and going left and right. I did have a couple of bartenders that were RAMP certified. There was a short period of time." *Id.* at 32.

15. While the CLA required an inspection of the premises by the PLCB in order to complete RAMP certification, that fifth step has since changed; now, an affidavit request is the fifth step. PLCB Website: RAMP Certification, http://www.lcb.state.pa.us/PLCB/Education/RAMP/RAMPCertification/index.htm; board hearing, N.T., 51-52. "[The hearing examiner's] questions in regard to whether the fifth step involving an inspection had been completed are obviously rendered moot by that change and irrelevant." Board hearing, N.T., 52.

16. Mr. Mathews acknowledged that licensee was not RAMP-certified at the December 2013 board hearing. *Id.* at 42-43, 45-48. Mr. Mathews mistakenly thought only the owners and managers needed RAMP certification prior to the December 2013 hearing. *CCP Hearing*, N.T., 40.

17. TABS maintains a separate checking account for the purpose of paying vendors. Mr. Mathews was aware that TABS had a problem with bad checks when Mr. Tabatabaie was licensee's sole stockholder. *Id.* at 41.

18. Licensing sent TABS thirty (30) insufficient funds letters during the period from December 19, 2012 through October 2, 2013, concerning licensee's issuance of drafts or checks to various distributors for the purchase of malt or brewed beverages with insufficient funds in the institution upon which they were drawn for the payment of such purchases. In each of the thirty letters, licensee was granted ten (10) days from the date of the letter to make payment, including any bank charges, in full to the various distributors with a warning that the failure to remedy the dishonored check within this time frame would result in the matter being referred to the Pennsylvania State Police, Bureau of Liquor Control Enforcement (BLCE) for further action. As of the December 2013 hearing, licensee failed to timely remedy six (6) of its dishonored checks,

resulting in information from said checks being referred to the BLCE for further action. Exhibit R-4: B-8.

19. Bernice Sheaffer was the licensing analyst who was responsible for investigating licensee's change of officers ("change of officers") application, which was submitted to licensing in the summer of 2012. Board hearing, N.T., 8-10.

20. As part of her investigation, Ms. Sheaffer met with Mr. Mathews in July 2012 at attorney Ralph Matergia's office. During this meeting Ms. Sheaffer discussed licensee's CLA with Mr. Mathews, and Mr. Mathews indicated that he was aware of the CLA and that he would comply with its provisions. Board hearing, N.T., 10-11. Additionally, Mr. Mathews recalls attorney Matergia mentioning the CLA in a phone call. *CCP Hearing*, N.T., 43-44. Mr. Mathews never asked for a copy from attorney Matergia, and he never contacted the LCB concerning the CLA. *Id.* at 44.

21. Mr. Mathews testified that "(i)t was just explained to me that there was a condition with the license and he had to be RAMP certified, and I just, ...never went any further than that conversation until the LCB started sending me letters." *CCP Hearing*, N.T., 47.

22. Mr. Mathews sent a letter dated December 26, 2013 to the Board regarding the security requirements of Section 6(b) of licensee's CLA. Mr. Mathews's letter alleged that there had been "zero incidents or occurrences at [licensee's] establishment" since the transfer of licensee's stock from Mr. Tabatabaie to him. Board hearing, N.T., 19. The letter further provided that:

[b]y requiring my security staff to wear clothing dictating that they are staff takes away from the atmosphere that we are providing for our customers. Wearing such

clothing intimidates and provides customers with the appearance that problems occur when they don't. It took many hours of hard work to build the patronage and the environment that this establishment now has. It would not benefit the business to require security to wear such clothing and as a result could in face (sic) incite unnecessary issues.

Exhibit A-11.

23. Mr. Mathews sent a letter to the board dated December 26, 2013, which appears to be in response to a letter from licensing dated September 20, 2013, regarding licensee's breach of its CLA. Mr. Mathews's letter provides the following: Mr. Mathews did not sign licensee's CLA; Mr. Mathews completed RAMP owner/management training on January 8, 2013; one (1) of licensee's employees, Aishling Fennessy, completed RAMP server/selling training on November 9, 2013; two (2) of licensee's employees have completed new employee orientation for the RAMP program; RAMP signage is posted; since September 2013, Mr. Mathews instructed licensee's employees to become RAMP-certified; and Mr. Mathews believed that he was in compliance with the RAMP requirements of the CLA. Board hearing, N.T., 19-21.

24. Mr. Mathews acknowledged that licensee's security's apparel does not meet the clothing requirement of Section 6(b) of licensee's CLA. Board hearing, N.T., 23-24; Exhibit A-11.

25. Mr. Mathews indicated that he was not aware of the requirement of Section 6(a) of licensee's CLA regarding maintaining a barred patrons list when he acquired licensee's stock. Board hearing, N.T., 24-25.

26. Mr. Mathews did not ask Mr. Tabatabaie or attorney

Matergia for a copy of licensee's CLA. Also, Mr. Mathews indicated that he never asked Mr. Tabatabaie for any papers that might affect his ownership or operation of the licensed premises, other than what was presented to him in regard to purchasing the corporation. *Id.* at 25, 33.

27. Licensee did not maintain a barred patrons list, as required by Section 6(a) of its CLA. As far as Mr. Matthews was concerned, TABS did not have any barred patrons. Also, Mr. Mathews indicated that he became aware of the barred patrons list requirement when he received the packet of information for the hearing from the board's office of chief counsel's attorney by cover letter dated November 12, 2013, and the packet included licensee's CLA. Mr. Mathews did not know if Mr. Tabatabaie had maintained a barred patrons list prior to Mr. Mathews acquiring licensee's stock, and he did not inquire as to the existence of such a list. *Id.* at 24-30, 34-35, 53-54; *CCP Hearing*, N.T., 33.

28. At the time of the meeting in attorney Matergia's office, Mr. Mathews understood licensee's CLA as being "just these minor little things that you know — could be corrected." Board hearing, N.T., 37. Mr. Mathews indicated that he realized what licensee's CLA entailed when he received a copy of the CLA around the time that licensee filed its renewal application. *Id.* at 37-40.

29. Mr. Mathews acknowledged that a partial basis for licensee's CLA was due to its previous late renewal filings, but licensee waited to file its renewal application until it obtained a lease for the licensed premises, as he was unsure if he was going to still remain at the premises. *Id.* at 40.

30. Mr. Mathews would like to see licensee's CLA modified in regard to the requirement that its security wear

identifiable apparel, but he has made no formal request for such a modification. Board hearing, N.T., 55.

31. Licensee has had a change in patrons since Mr. Mathews became licensee's stole stockholder and Mr. Mathews believes that having "bouncers all over the place is not good for the bar." *Id.* at 56-57, 59.

32. Donna Casole, a patron of licensee, testified that Mr. Matthews operates a well-run establishment that has not had criminal activity occurring on or about the premises. *Id.* at 62-64.

33. Ms. Casole was aware of an incident which occurred in February 2009 or 2010, where a friend of one (1) of licensee's prior shareholders entered the establishment with a shotgun and threatened the other shareholder. The police responded and a report was prepared, Mr. Mathews did not obtain the police report so he would be able to identify the individual with the gun, to ensure that this problematic individual did not frequent licensee's establishment. *Id.* at 70-75.

## DISCUSSION

Licensee filed an appeal from the PLCB order on March 21, 2014. The PLCB filed an opinion dated April 25, 2014 in support of its order dated March 19, 2014, appearing in the record as Exhibit R-5 and refusing licensee's renewal application. A hearing on the appeal was held on June 19, 2014. The PLCB called no witnesses, but introduced various documents, including the notes of testimony and exhibits. Exhibits R-1 — R-4. The opinion of the PLCB denying the renewal of the license was also introduced. Exhibit R-5. Robert Mathews testified on behalf of the licensee, and licensee introduced various documents and letters. Exhibits A-1 — A-13. The parties were given leave to file briefs after the transcript was prepared.

A trial court reviewing a decision of the PLCB not to renew a liquor license hears the matter *de novo*, and may sustain, after, modify, or amend the board's order even when it is based upon the same evidence presented before the board. *Philly Int'l Bar, Inc. v. Pa. Liquor Control Bd.*, 973 A.2d 1, 3 (Pa.Cmwlth. 2008), *appeal denied*, 980 A.2d 609 (Pa. 2009). The trial court has the duty of receiving the record of the proceedings before the board, if introduced into evidence. *Two Sophia's, Inc. v. Pennsylvania Liquor Control Bd.* 799 A.2d 917, 922 (Pa.Cmwlth. 2002). Although Mr. Mathews contests the examination of past, adjudicated citations that occurred prior to his purchase of the shares of the company, generally, in the context of a nonrenewal action, the finder of fact may consider all past adjudicated liquor code violations no matter when they occurred. *See Pennsylvania Liquor Control Bd. v. Bartosh*, 730 A.2d 1029, 1033 (Pa.Cmwlth. 1999); *First Ward Republican Club of Philadelphia v. Com.*, 11 A.3d 38, 47 (Pa.Cmwlth. 2010).

Under the liquor code, renewal of a liquor license is not automatic. Section 470(a.1) of the liquor code provides that the PLCB "may" refuse to renew a liquor license for several reasons, including the fact that a licensee has one or more adjudicated citations. The use of the term "may" gives the PLCB discretionary authority to decide whether to grant or deny a properly filed renewal application. *U.S.A. Deli, Inc. v. Pa. Liquor Control Bd.*, 909 A.2d 24, 28 (Pa. Cmwlth. 2006), *appeal denied*, 929 A.2d 647 (Pa. 2007). The licensee's record of violations may be considered in deciding whether to renew a liquor license, and even a single violation can be sufficient grounds to decline to renew the license. *Goodfellas, Inc. v. Pa. Liquor Control Bd.*, 921 A.2d 559, 564-565 (Pa.Cmwlth. 2007), *appeal denied*, 934 A.2d 1279 (2007). "If anything, *de novo* review by the judicial branch assures litigants that license

suspensions based on violations of the liquor code will only be enforced when neutral judicial officers, detached from the bureau charged with the task of monitoring and enforcing the liquor laws of this Commonwealth are satisfied that violations have, in fact, been established." *Two Sophia's*, 799 A.2d at 920-21 (quoting *Pennsylvania State Police, BLCE v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14 (Pa. 1994)).

Moreover, "The PA Supreme Court has stated that there is perhaps no other area of permissible state action within which the exercise of the police power of the state is more plenary than the regulation and control of the use and sale of alcoholic beverages." *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board*, 631 A.2d 789, 791 (Pa.Cmwlth. 1993). "[The Commonwealth Court] has stated that the purpose of the code, as enforced by the board, is to regulate and restrain the sale of liquor, not promote it." *Id.* at 792. Thus, this court will examine the record both from the board hearing and from the June 19, 2014 hearing bearing in mind the purpose of the liquor code and the state's interest in limiting and regulating the sale of alcohol.

The PLCB's decision not to renew TABS' license was based upon TABS' noncompliance with a Conditional Licensing Agreement from which licensee's citations originate:

> The board may enter into an agreement with the applicant concerning additional restrictions on the license in question. If the board and the applicant enter into such an agreement, such agreement shall be binding on the applicant. *Failure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under §471 and for the non-renewal of the license under this section.*

47 P.S. § 4-470(a) (emphasis added).

The PLCB concluded that licensee's failures to become compliant with the Responsible Alcohol Management Program (RAMP) by the hearing date, to keep a barred patrons list, to employ visibly identifiable security at certain hours, and to ensure sufficient funds to pay all vendors were sufficient to warrant the nonrenewal of the license. While Mr. Mathews had changed the atmosphere and clientele of the bar under his management, the PLCB did not believe these were "sufficient timely corrective measures." Exhibit R-5 at 30.

Mr. Mathews, the sole shareholder of licensee, testified that he had attempted to comply with the CLA as he understood it, but a major part of his problem in failure to comply was that he never had a copy of the CLA. Mr. Tabatabaie, the previous sole shareholder, signed the CLA in 2011.

The citations listed in the PLCB's letter to Mr. Mathews dated October 3, 2013 include:

1. The adjudicated violations from 2008 until 2010, which occurred under Mr. Tabatabaie's management. These violations include, in part, sale of alcohol in excessive amounts, disorderly operations, and a stabbing that occurred near the premises;

2. The breach of the CLA approved on April 20, 2011. "Specifically, you have not become compliant with the Responsible Alcohol Management Program (RAMP); you failed to maintain and enforce a written barred patrons list on the licensed premises; you failed to employ at least one (1) security guard to be present and working at the premises on all Friday and Saturday nights from 9:00 p.m. until closing; and you failed to ensure sufficient funds to pay all vendors."

3. A late-filed renewal application.

Exhibit A-1.

The CLA was applicable to Tabs Entertainment, the licensee in this case, stating.

> This Conditional Licensing Agreement...is made between the Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board...located at Capital and Forster Streets, Harrisburg, Pennsylvania 17124 and Tabs Entertainment, Inc. ...holder of Hotel Liquor License No. H-2892 (LID 59040) for use by it at premises located at Route 196, Box 416, Sterling Road, Tobyhanna, PA 18466-0000.

Exhibit R-4 (CLA).

TABS was the licensee for purposes of the CLA, and the past citations. Mr. Mathews bought the shares of the company instead of commencing business in a new business entity; thus, as manager, he was responsible to comply with the TABS CLA. All of these citations and the CLA itself are part of TABS' history, and that is what this court must examine.

Licensee did not meet the CLA's requirement that the establishment maintain a barred patrons list. Mr. Mathews stated in both the board hearing in December 2013 and in the hearing in June 2014 that he did not keep a barred patrons list, because his business. "The Doo Wop Lounge," did not have any barred patrons. Board hearing. N.T., 24-30, 34-35, 53-54; *CCP Hearing*, N.T., 33. However, Mr. Mathews did not ask Mr. Tabatabaie if there had been a barred patrons list from the previous business, even though Mr. Mathews was "well aware" of the previous business's reputation and violent patrons. Board hearing, N.T., 32. Mr. Mathews's problem here is that he did not

technically comply with the CLA. It appears that under his management, troublesome patrons stayed away, so he had no one to add to the "barred patrons list." However, in compliance with the CLA, he should have maintained such a list, including people who had been violent on or about the premises in the past. It was not unreasonable for the PLCB to require this safety precaution, considering the bar's history and the possibility that violent patrons might return.

While the October 3 letter states that Mr. Mathews failed to employ security during the required hours, Mr. Mathews insists that he had security, but that they were not identifiable by their clothing, as required in the CLA. This again was a violation of the CLA, admitted by Mr. Mathews. He argued that hiring visible "bouncers" would be bad for his restaurant's business and that it would detract from the atmosphere he had cultivated in his bar, Exhibit A-11, though Mr. Mathews did have visible security after the December 2013 hearing. *CCP Hearing*, N.T., 41. Again, the CLA pertains to the history of licensee itself rather than the Doo Wop Lounge as it existed under Mr. Mathews. Licensee had supported unsavory practices over its years in business and even had violent altercations. The CLA, with its requirement for identifiable security, addressed that issue. As stated in the CLA itself, "[t]hese terms will remain in effect both on the license and on the premises unless and until a subsequent agreement is reached with the board rescinding these restrictions or until the license is transferred to a new owner for use at a new location." Exhibit R-4 (CLA). Mr. Mathews could have formally petitioned the PLCB for a change to the CLA, considering the changes he brought to the atmosphere and clientele of his bar. Nevertheless, in the meantime, Mr. Mathews was required to ensure compliance with the CLA. Again, it appears that he was unaware of this requirement.

Mr. Mathews did not obtain TABS RAMP certification as required by the CLA. He made an effort to accomplish RAMP certification with his own certification as a manager, but did not follow through as the CLA required to complete TABS' certification. Again, he failed to afford sufficient attention to the details of the CLA and the details of what RAMP certification required. The CLA required that, within 90 days of approval of the agreement, the establishment must be RAMP certified. The PLCB provides a five-step test for applicants to complete: owner/manager training. server/seller training, new employee orientation, signage, and affidavit request for RAMP certification. The CLA, however, stated the first four requirements verbatim, but the fifth requirement was stated as "A certification compliance inspection by a representative of the board's Bureau of Alcohol Education." Exhibit R-4 (CLA). This fifth requirement has since been replaced by the affidavit request, and thus, Mr. Mathews was not required to undergo the inspection. *See CCP Hearing*, N.T., 52. No documentation was submitted to demonstrate that Mr. Mathews was indeed RAMP certified by the June 2014 hearing, but, even if licensee was RAMP certified by that date, licensee did not meet the 90 day requirement included in the CLA. The bar had been closed for more than one year before Mr. Mathews took over and opened on June 6, 2012; the CLA was signed in 2011. At the December 2013 hearing, however, Mr. Mathews admitted he was not in compliance with RAMP, as he had mistakenly believed he needed only owner/manager training. This occurred well over one year after Mr. Tabatabaie transferred the shares to Mr. Mathews, and Mr. Mathews had not met the proper requirements.

Finally, Mr. Mathews failed to ensure sufficient funds for the payment of suppliers. Between December 19, 2012 and October 2, 2013, the PLCB sent Mr. Mathews a total

of 30 letters concerning checks returned for insufficient funds. Exhibit R-4: B-8. As licensee had citations pertaining to insufficient funds in the past, this issue was detailed in the CLA. Exhibit R-4 (CLA). These letters were all sent after Mr. Mathews's purchase of the shares, and the sheer number of them indicates that this was a consistent problem during the entirety of Mr. Mathews's management. Although appellant's brief claims that Mr. Mathews has since "made good" on those checks, the CLA required that licensee maintain sufficient funds to pay vendors and to satisfy account requirements; thus, licensee did not meet this requirement.[2]

The requirements of the CLA were not met, despite Mr. Mathews's uninformed efforts to comply. He first became aware of the CLA in the stock transfer meeting with Ms. Sheaffer, but he did not inquire as to the terms of the agreement or ask for a copy. Even after receiving letters from PLCB and a copy of the agreement in September 2013, Mr. Mathews did not make a serious attempt at full compliance. Board hearing, N.T., 37. Mr. Mathews was required to employ identifiable security guards, keep a barred patrons list, ensure sufficient funds, and obtain RAMP certification due to the number and severity of the citations committed while under the management of Mr. Tabatabaie, and he failed at meeting these requirements.

Mr. Mathews appears to have had good intentions in his management of TABS and it also appears that he was successful in changing the business to attract a law-abiding crowd. His problems with the PLCB appear to stem from

---

2. While Mr. Mathews additionally filed a late renewal application due to his uncertainty as to whether he would renew a lease on his property and due to waiting for the department of revenue's tax clearance, the PLCB did not include a failure to pay the late filing fees on the October 3 amended objection letter, the most recent Mr. Mathews received. Exhibit A-10.

not having legal counsel when he purchased the license and not obtaining legal advice as he managed it. On his own, apparently without the benefit of counsel, he failed to comply with a conditional licensing agreement that was in place and that the PLCB had the right to enforce. Mr. Mathews thus failed to meet the requirements intended to regulate the sale of alcohol in the Commonwealth.

The PLCB was warranted in refusing to renew the license.

## ORDER

And now, this 5th day of December, 2014, following a hearing and consideration of the parties' briefs, it is ordered that the appeal from the decision of the Pennsylvania Liquor Control Board filed by Tabs Entertainment, Inc. is denied.